*In re* MARRIAGE OF KAREN MITCHELL, Petitioner-Appellant and Cross-Appellee, and ROBERT MITCHELL, Respondent-Appellee and Cross-Appellant.

Second District    No. 81-440

Opinion filed December 31, 1981.

Bernard L. Rivkin, of Feiwell, Galper and Laskey, Ltd., of Chicago, for appellant.

Marjorie F. Stampolis and Ernst W. Kobrow, both of Chicago, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Karen Mitchell appeals from an order denying her petition for permanent custody of David Mitchell and from an order denying her motion for a rehearing. Robert Mitchell cross-appeals from the judgment of dissolution of marriage, from the denial of child support and from the disposition of marital property.

## The Wife's Appeal

The wife was granted temporary custody of the son of the parties, David Mitchell, then age 5, in April 1979 following the wife's petition for dissolution of marriage.. On June 4, 1980, following a hearing, the trial court granted permanent custody to the husband. He considered the respective employment of both spouses, the wife as an actuary with Daskais & Walls, Inc., the husband as part of management for Wilcox International. The court concluded that David "is going to need a tremendous amount of support and love and assistance"; great demands were being made on the wife professionally; the husband was in a better position to give more time to the child; and placing custody in the father with extensive visitation to the mother was in the child's best interest.

The trial court has a broad discretion in awarding custody, and there is a "strong and compelling" presumption in favor of its decision. (*Gren v. Gren* (1978), 59 Ill. App. 3d 624, 626.) Decisions as to custody rest within the sound discretion of the trial court and will not be disturbed on appeal unless contrary to the manifest weight of the evidence. (*In re Custody of Scott* (1979), 75 Ill. App. 3d 710, 714.) We conclude that the order granting

custody to the husband was not against the manifest weight of the evidence.

The evidence was in considerable conflict on this issue. Without going into great detail, we conclude that there was sufficient evidence that, given the stress David was under, the father was better able to provide parental care. The record shows that David had had four different babysitters in the last year and a half. His daily routine while he was in his mother's custody included eating breakfast at the baby sitter's, and spending "at least two hours" at the baby sitter's after school each day where he watched television cartoons. There was testimony that Mrs. Mitchell had not wished to reduce her work hours and that they were long and not always flexible; that she worked an average one weekend day a month and had gone on numerous out of town trips.

Mr. Mitchell, although employed full time, had some flexibility in his schedule and had taken time off in November and December of 1978 to care for David while Mrs. Mitchell was seeing a psychiatrist. Mrs. Mitchell admitted that her husband and David have a "good relationship." In addition, the evidence indicates that David and his father spend their time together in Elmhurst engaging in sports and other beneficial activities which David enjoys; that David had several good friends near the Elmhurst home but none in the Downers Grove neighborhood of his mother; that David told the judge that he got along "pretty good" with his mother and "fine" with his father.

While the judge found that both parents were interested in David's education, including programs for gifted students, the facts which we have mentioned, and to which the court could give credence in spite of the conflicting testimony, provide sufficient basis for the trial court's decision.

The wife also claims that the trial court erred in refusing to hear her motion for a rehearing of the permanent custody order which was entered on June 4, 1980. On May 20, 1981, the wife presented a motion for rehearing under section 68.3 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 68.3). The trial court refused to hold a hearing on the petition, instructing the wife's attorney to file a petition for modification of the decree under section 610 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 610)). The wife argues that the court erred in denying the motion without a hearing.

■■■ Generally, section 610 of the Marriage and Dissolution of Marriage Act mandates that no motion to modify a custody judgment may be made earlier than two years after its date unless the court believes that the present environment seriously endangers the child's welfare; or that circumstances have changed since the prior judgment making modification in the child's best interest. It is settled that section 610 does not

preclude the use of section 68.3 motions to challenge permanent custody decrees on grounds not peculiar to child custody cases. (*In re Marriage of Herron* (1979), 74 Ill. App. 3d 748, 753.) Section 68.3 requires, however, that a motion for rehearing be filed within 30 days after entry of the decree; here, the motion was not filed until nearly a year after the decree. The wife argues that the permanent custody decree does not fall within section 610 or the 30-day requirement of section 68.3 because it was not a "final order" as it determined only one issue of the case while others were unresolved. We cannot agree. It is clear from the record that the custody order entered June 4, 1980, was intended to be permanent. The fact that the order may not have been final for appeal purposes does not alter the fact that it was a conscious modification of the temporary custody arrangement made after a testimonial hearing. Under such circumstances it could only be altered upon a showing made in accordance with the terms of section 610 of the Marriage and Dissolution of Marriage Act. *Carroll v. Carroll* (1978), 64 Ill. App. 3d 925, 930.

### The Husband's Cross-Appeal

A. The husband first contends that the grounds of extraordinary and repeated mental cruelty as grounds for the dissolution of the marriage were not proved; and that the wife failed to show lack of provocation for the alleged incidents of mental cruelty.

■■ A trial court's finding of sufficient evidence of mental cruelty is presumed to be correct, and the court's decision will not be set aside unless against the manifest weight of the evidence. *Hayes v. Hayes* (1969), 117 Ill. App. 2d 211.

■■ Mr. Mitchell's conduct, particularly in the two months after the separation, appears to go well beyond mere sporadic acts tending to humiliate or embarrass Mrs. Mitchell. (See *Gregory v. Gregory* (1974), 24 Ill. App. 3d 436, 441.) There was evidence of repeated phone calls at odd hours of the night, a threat to kill himself, and the deliberate failure to take his medication, to the point where he was "dying of natural causes." This was sufficient to constitute conduct "calculated or obviously of a nature to torture, discommode, or render [Mrs. Mitchell's] life unendurable or miserable * * *." (24 Ill. App. 3d 436, 441.) Moreover, the trial court also found that Mr. Mitchell had, at earlier times in the marriage, accused his wife of infidelity, thrown a telephone at her, kicked a hole in the front door, with Mrs. Mitchell and David present, during a fit of anger, referred to Mrs. Mitchell's behavior as unreasonable and irrational, and refused to consult with her on financial and tax matters. While the husband denied much of this, the court could give credence to the wife's testimony.

■■ Furthermore, Mr. Mitchell himself testified that his wife was under considerable emotional strain during the marriage and was basically

"high-strung," an assertion borne out to some degree by Mrs. Mitchell's visits to psychiatrists in 1976 and 1978. The emotional makeup of the parties, particularly the complaining spouse's mental health, is a factor to be considered in whether the offending spouse's actions constitute mental cruelty. *Hayes v. Hayes* (1969), 117 Ill. App. 2d 211, 215-16.

Mr. Mitchell argues that there was no evidence that his conduct caused any change in Mrs. Mitchell's mental or physical condition. However, causation is adequately shown by Mrs. Mitchell's own testimony and also is reasonably inferrable from the nature of the acts themselves, and from Mrs. Mitchell's emotional problems during much of the marriage.

Mr. Mitchell also argues that much of his conduct was provoked by Mrs. Mitchell. Specifically, he testified that his "suicide threat" of Thanksgiving 1978 and subsequent decision to stop taking his medication were brought on by Mrs. Mitchell's admission that she had tried to kill him. He also testified that he kicked the front door because Mrs. Mitchell had just admitted she was having an affair.

Although Mrs. Mitchell did not directly deny the husband's testimony in this regard, she generally denied any infidelity. Moreover, there did not appear to be any provocation shown for the husband's harassing phone calls, his suicide threats, his attempted suicide, his accusation that his wife was having an affair with a man from whom she bought a video recorder, and the husband's refusal to consult the wife on financial and other matters. On the whole record we conclude that the finding of unprovoked mental cruelty is not against the manifest weight of the evidence. The trial judge was in the best position to determine the credibility of witnesses and the weight to be assigned the conflicting testimony. *In re Marriage of Nilsson* (1980), 81 Ill. App. 3d 580, 587.

B. The husband objects to only one aspect of the trial court's property distribution: the award of the entire 270 shares of Daskais & Walls stock to the wife. He argues that even though the distribution was otherwise equitable, the value of the stock is so great that, factored into the settlement, it makes the distribution as a whole inequitable.

The husband argues that as the wife owns 12.3% of the outstanding stock in Daskais & Walls, the stock's value is 12.3% of the company's annual gross receipts, times a multiplier of 1.75, resulting in a valuation (based on annual gross receipts of about $997,000) or $214,644.72. The wife argues that the stock's value should be determined by looking at sales back to the corporation, since the corporation has the right of repurchase. She arrives at a value of $27,600 on this basis.

It should first be noted that there appears to be little dispute on the value of the rest of the property involved in the distribution of $86,706 for the husband and $108,323 for the wife. We conclude that there was

sufficient evidence of the stock's value for the trial court's decision to stand.

■■■ A division of property will be reversed only where the trial court acts arbitrarily and ignores recognized principles of law so that substantial injustice results. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127.) Although the trial court must consider all relevant factors under section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503), it need not make specific findings of fact as to the value for each item in dispute. (*In re Marriage of Thompson* (1979), 79 Ill. App. 3d 310, 316.) The court, however, must have some evidence of the value of each piece of property in order to divide the property in "just proportion." *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 636.

■■ The evidence is sufficient to support the judgment of the trial court which appears to give considerable weight to the wife's testimony. There was testimony as to recent sales of stock as well as the original purchase by Mrs. Mitchell. There was also testimony that transfer of stock was limited by the corporation's right of purchase; that Daskais & Walls' taxable net income for the past year was zero; that its gross receipts increased only about 15% between 1976 and 1979; and that Mr. Daskais and Mr. Walls owned a controlling interest in the corporation. We have held that precise rules for determining the value of closely held stock cannot be laid down but that every relevant evidential fact entering into the value of the corporate property reflecting itself in the worth of the corporate stock should be considered, including past sales if relevant. (*Stewart v. D. J. Stewart & Co.* (1976), 37 Ill. App. 3d 848, 855.) In the exercise of its discretion the trial court could reject the husband's argument that the stock in the closely held service corporation should be valued primarily according to gross receipts, based on a multiplier which was not firmly established, and without considering how much of the receipts were eaten up by expenses and debts. Also the court could reject the husband's alternative argument based on the sale of stock. This argument ignored a two-for-one split in late 1979, the reorganization in June of 1979 whereby the provision of incentive compensation units to certain shareholders made Mrs. Mitchell's shares worth appreciably less than before, and the uncontradicted testimony of Mrs. Mitchell that her choice of extra stock rather than incentive compensation further decreased the value of each share. Given the wide discretion the trial court has to dispose of property, we conclude that the distribution was not an abuse of discretion and that there was sufficient evidence of the stock's value to support the judgment.

C. We also conclude that the trial court did not abuse its discretion in denying child-support payments to the husband. The trial court denied direct child-support payments but required the wife to pay for David's

medical insurance and clothing. In so holding, the court found the husband had sufficient funds available to provide for himself and David, expressed concern, noting irregularities in the husband's past tax returns, that he would divert support money to his own personal use, and took into account not only the wife's payment of David's medical insurance and clothing costs but payment of all of David's expenses during visitation. The husband's argument that the trial court abused its discretion is based on the reasoning that the court did not consider the standard of living the child would have enjoyed had the marriage not been dissolved (Ill. Rev. Stat. 1979, ch. 40, par. 505(a)(3)). He contended that the decision not to award direct support was error because if the marriage had continued David would live in an $80,000-a-year to $90,000-a-year-income family, whereas the husband's income is only $30,000 per year.

The trial court has broad discretion in determining the necessity for and the amount of a support award, and its decision will not be set aside unless contrary to the manifest weight of the evidence. (*In re Marriage of Lovejoy* (1980), 84 Ill. App. 3d 53, 59.) Here there is no evidence that the court failed to consider the pre-dissolution standard of living as one of the five factors under section 505(a). The items of support to which the husband testified were consistent with his income and other assets. Moreover, the wife was ordered to pay a considerable part of the expenses, including clothing, medical insurance, and all expenses during visitation which amounted to approximately one-third of the year. Further, the court found that the wife had long been willing to support David with voluntary expenditures and gifts. We find no abuse of discretion.

We affirm the judgment of the trial court.

Affirmed.

REINHARD and NASH, JJ., concur.