*In re* MARRIAGE OF RICHARD Y. SEVON, Petitioner and Counterrespondent-Appellant, and WANDA I. SEVON, Respondent and Counterpetitioner-Appellee.

First District (4th Division)   Nos. 82—971, 82—1804, 82—2612 cons.

Opinion filed August 25, 1983.

Leonard T. Timpone, of Timpone & Rickelman, Ltd., of Chicago, for appellant.

Gary E. Dienstag, of Springer, Casey, Haas, Dienstag & Silverman, of Chicago, and Michael H. Minton, of Facchini & Minton, of Schaumburg, for appellee.

JUSTICE LINN delivered the opinion of the court:

Richard Sevon filed a petition for dissolution of marriage on August 19, 1980, in the circuit court of Cook County. Wanda Sevon filed an answer and counterpetition on September 12, 1980. Following a contested trial, a judgment of dissolution of marriage was entered on December 31, 1981; a supplemental judgment of dissolution was entered on February 4, 1982. Richard filed a notice of appeal from the supplemental judgment, and on September 30, 1982, the trial court awarded Wanda $4,000 in attorney fees to defend the appeal. Richard also filed a notice of appeal of this fee award. By order of this court, the appeals have been consolidated.

Richard argues on appeal that the distribution of marital property was inequitable in that (1) the trial court improperly evaluated the ec-

onomic circumstances, standard of living, and available income of each of the parties; (2) the award of maintenance to Wanda was excessive; and (3) the trial court should not have considered a judgment entered against Richard for failure to pay court-ordered temporary maintenance and should have entered a judgment against Wanda for dissipation of the marital assets. He also argues (4) that the trial court committed error in refusing to vacate the fee award on his motion, which claimed he was not given notice of the hearing on Wanda's petition for fees; and (5) that the trial court erred in ordering him to pay fees incurred by Wanda in defending his appeal where there was no evidence that he was financially able to pay.

We affirm in part and reverse in part.

FACTS

Wanda and Richard Sevon were married in 1954. They had two children, both of whom are now adults. They lived in Des Plaines in a home that, at the time of trial, had a net equity value of $133,550. In July 1980, Wanda discovered that Richard was having an affair with another woman. Wanda became distraught; she was hospitalized for a period of 30 days, and has since been under the care of her doctor. Richard moved out of the marital home at the time his involvement with the other woman was disclosed.

In October 1980, the circuit court awarded Wanda exclusive occupancy of the home and ordered Richard to pay Wanda a lump sum of $800 and also to pay all "bills relating to the marital premises" as temporary maintenance. Richard never made such payments. At the time of trial the accrued arrearage was $7,811.32; it continued to increase until the supplemental judgment of dissolution ordered that it would be satisfied through the court's award of the marital home to Wanda.

Richard is self-employed as a builder. His petition for dissolution stated that he earned approximately $36,000 per year. The trial court's supplemental judgment of dissolution recites that in an affidavit dated January 20, 1981, Richard stated his wages were $1,500 per month. Between January and August, 1980, he deposited $29,966 in a bank account having an existing balance of $2,880. Richard's construction company had gross receipts of $40,000 in a 20-month period, and Richard claimed accounts receivable of an additional $1,200. He testified that his income in 1981 was about $1,200; he was working at the time of trial and was bidding on other construction jobs. The trial court noted "with disbelief" Richard's testimony that, beginning in August 1980, he had obtained three $10,000 bank loans and also bor-

rowed money from his parents.

The parties stipulated that during the 27-year marriage Wanda had performed all the services of a homemaker and raised two children. Wanda testified that she performed these services without assistance from Richard. She also worked part time for United Airlines throughout the 27 years. In 1981 she earned about $6,000. During the marriage she had borrowed between $20,000 and $30,000 from her credit union to help Richard's business. Wanda was 46 years old at the time of trial. Her employer's pension plan will pay her $222 per month at age 65. Her biweekly income from her job and from rent received from two boarders in her house was $348.24.

After Richard moved out in July 1980, he made three mortgage payments; Wanda paid all the other expenses for the maintenance of the home. To meet these and her personal and medical expenses, Wanda asserts, she spent $14,000 given to her by Richard in February 1980 and the $10,000 in her credit union account. When questioned on cross-examination about her use of marital funds for these purposes she testified that Richard had threatened to "leave her penniless." The trial court found Wanda's expenditures to be "necessary and appropriate *** legitimate family expenses."

The trial court awarded the marital residence to Wanda in lieu of maintenance. The court noted that "[Wanda] is employable only at a low income as compared to [her] standard of living and that maintenance would be appropriate." However, "[t]he court finds that the distribution of property is appropriate in this case in lieu of an award of maintenance in that the court finds [Richard] to be an unreliable source of income due to his history of noncompliance, *** and [his] irregular income coupled with his exhibited ability to borrow large amounts of money from banking institutions while refusing to pay any of said monies to [Wanda] pursuant to court orders."

The court also awarded a 1977 Cadillac, $2,500, and her pension to Wanda; and a 1978 Buick and an insurance policy having $1,500 cash value to Richard. The trial judge explained his findings as follows: "[Richard] is able to maintain his present needs and his opportunity for the acquisition of income and assets in the future far outweighs that of [Wanda]. The court finds [Richard] to be presently employable and able to support himself adequately. The fact that [he] indicated he has spent all of his money, the court deems irrelevant."

OPINION

■■ Richard maintains in this appeal that the trial court's distribution of marital property was inequitable. He argues that the trial

judge improperly evaluated the economic circumstances of the parties and consequently made an excessive award of maintenance to Wanda; he also claims that the trial judge should not have considered the judgment entered against him for failure to pay temporary maintenance as ordered and should have entered a judgment against Wanda for dissipation of the marital assets.

The latter claim is based on Richard's contention that Wanda "secreted" the $24,000 she alleges she spent for personal and household expenses after Richard left the marital home in July 1980. However, this characterization of Wanda's expenditures is not supported by the record, which indicates that Richard voluntarily transferred $14,000 to Wanda for her use in paying the family's bills, as she had done throughout the marriage. The other $10,000 came from Wanda's credit union account.

Dissipation of marital assets occurs when a spouse uses marital property for his or her own benefit for a purpose unrelated to the marriage while the marriage is breaking down. (*Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 386 N.E.2d 517.) The record contains a complete list of Wanda's expenditures for her own support, including maintenance of the marital residence. The trial judge found that these expenditures were "necessary and appropriate *** legitimate family expenses," and we agree because there is no evidence in the record to indicate that she spent the money for purposes unrelated to the marriage. Richard's claim that the trial judge should have entered a judgment against Wanda for dissipation of marital assets is without merit.

■ Richard also claims, apparently as a corollary to the above argument, that the trial court should not have entered judgment against him for failure to pay court-ordered temporary maintenance because he "would have been able to make the household payments if [Wanda] had not improperly secreted the money from their joint account, and it is [she] who should be estopped from alleging the arrearages *** because she has unclean hands relating to the inability of [Richard] to pay." In support of this statement Richard cites *Mascenic v. Anderson* (1977), 53 Ill. App. 3d 971, 369 N.E.2d 172, which held, in a situation totally unlike the case at bar, that the doctrine of unclean hands (misconduct on the part of a plaintiff that will defeat recovery in a court of equity, which was done in connection with the very transaction complained of and consisted of misconduct, fraud, or bad faith toward the defendant making the contention) did not operate to bar the relief requested. Richard fails to explain how *Mascenic* can be interpreted as support for his claim, and we find no authority in this precedent

for application of the "clean hands" doctrine in the case at bar. Accordingly, we hold that the trial judge's findings regarding both Wanda's expenditures and Richard's failure to pay temporary maintenance as ordered were proper.

■ We also disagree with Richard's claim that the marital property was not distributed in just proportions. (Ill. Rev. Stat. 1979, ch. 40, par. 503(c).) Numerous Illinois decisions have recited the rule that distribution of marital property is a decision to be made in the sound discretion of the trial court, and a reviewing court will not reverse such a decision unless it reflects an abuse of discretion. (*In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 425 N.E.2d 1146; *In re Marriage of Peoples* (1981), 96 Ill. App. 3d 94, 420 N.E.2d 1072; *In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 403 N.E.2d 730.) The requirement that division be just does not mean that division must be equal. *In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 411 N.E.2d 238; *In re Marriage of Pruitt* (1981), 101 Ill. App. 3d 755, 428 N.E.2d 732.

"[B]y giving both spouses an interest in 'marital property' upon dissolution of marriage, the legislature sought to *** replace the concept of post-marital support through alimony with one of post-marital stability through a just distribution of marital property and assets." (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 576, 376 N.E.2d 1382, 1388.) Thus, a trial court is encouraged to provide for a spouse's needs through its distribution of marital property rather than through an award of maintenance. (*In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 425 N.E.2d 1146; *Schubert v. Schubert* (1978), 66 Ill. App. 3d 29, 383 N.E.2d 266.) An unequal distribution of marital property in lieu of maintenance is appropriate in cases such as this one, in which the payor spouse has demonstrated his unreliability. *Schasker v. Schasker* (1975), 34 Ill. App. 3d 980, 341 N.E.2d 717.

In this case, the financial positions of the parties are not equal; Wanda is employed part time at a modest salary, and apparently has no special training that would enable her to increase her income significantly, while Richard has earned substantially larger amounts of money than Wanda has in the past, and possesses skills and experience that can enable him to do so in the future. Further, Wanda has experienced medical problems that may both increase her expenses and curtail her ability to work in the future. The trial judge found that Wanda's low income compared to the standard of living she had experienced during the marriage made an award of maintenance appropriate, and that Richard's past behavior made the award of the marital residence to Wanda in lieu of periodic maintenance payments

appropriate. We agree.

"In determining whether the trial court abused its discretion, the question is \*\*\* did the trial court in the exercise of its discretion act arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceed the bounds of reason and ignore recognized principles of law so that substantial injustice resulted. This is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. It would seem that if reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126, 129; see also *In re Marriage of Hyland* (1981), 95 Ill. App. 3d 31, 419 N.E.2d 662.) Applying this standard to the case at bar, we find no abuse of discretion in the distribution of the marital property.

■ We agree, however, with Richard's argument that he should not have been ordered to pay attorney fees incurred by Wanda in defending this appeal because there is no evidence in the record to indicate he had the financial ability to pay these fees. The testimony at trial regarding Richard's income and expenses was somewhat vague; it seems to indicate that both Richard and Wanda had exhausted their savings by the time of the trial. The trial judge labelled Richard's income "irregular." Wanda's testimony at the hearing on her petition for fees that Richard was working appears to be hearsay; even if Wanda had personal knowledge that Richard was working at the time of the hearing, there is no evidence of Richard's income in the record. The distribution of property following dissolution of the marriage gave the only signifiant marital asset, the marital residence, to Wanda. In short, there is no evidence that Richard possessed any assets other than an automobile and an insurance policy at the time the trial court ordered him to pay Wanda's attorney fees.

The authority for allowance of fees on appeal is found in section 508(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 508(a)(3)). The allowance of attorney fees is a decision that rests within the sound discretion of the trial court, and a fee award will not be reversed on appeal unless an abuse of discretion is shown. (*Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 400 N.E.2d 56; *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576.) An award of fees is justified only where the party seeking the award has demonstrated his or her own inability to pay and the financial ability of the other spouse to do so. *In re Marriage of Smith* (1981), 100 Ill. App. 3d 1126, 427 N.E.2d 1262; *In re Marriage*

*of De Frates* (1980), 91 Ill. App. 3d 607, 414 N.E.2d 1188; *Donnelley v. Donnelley; Gasperini v. Gasperini; Glassman v. Glassman* (1971), 133 Ill. App. 2d 609, 273 N.E.2d 177.

In applying these principles, this court recently held that denial of attorney fees to a spouse claiming inability to pay was not an abuse of discretion in a case where the petitioning spouse had not sustained her burden of showing her spouse's ability to pay the fees. (*In re Marriage of Donahoe* (1983), 114 Ill. App. 3d 470, 448 N.E.2d 1030.) Conversely, this court reversed an award of fees where there was a similar failure to demonstrate the financial ability of the payor spouse to comply with the order to pay attorney fees. *In re Marriage of De Frates* (1980), 91 Ill. App. 3d 607, 414 N.E.2d 1188.

In our view, these precedents are controlling in the case at bar. We need not discuss the question of Wanda's inability to pay her own attorney fees because the record does not indicate that Richard is able to pay them. Indeed, as noted above, the record shows that the only major item of marital property, the home, was awarded to Wanda, leaving Richard without assets with which to pay the fees as ordered. Accordingly, we reverse the trial court's order that Richard pay $4,000 for Wanda's attorney's defense of this appeal.

Affirmed in part, reversed in part.

ROMITI, P.J., and JOHNSON, J., concur.