*In re* MARRIAGE OF MARIAN BAUER, Petitioner-Appellee, and GEORGE BAUER, Respondent-Appellant.

First District (4th Division)   No. 84—2097

Opinion filed November 21, 1985.

Jon L. Beermann & Associates, Ltd., of Libertyville (Jon L. Beermann, of counsel), for appellant.

James R. Truschke & Associates, P.C., of Arlington Heights (James R. Truschke and Matthew C. Arnoux, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Respondent-appellant, George Bauer, appeals from certain financial dispositions decreed in a judgment for dissolution of marriage. On appeal, he claims as error the trial court's (1) valuation of his one-man corporation, (2) order directing him to pay petitioner-appellee's, Marian Bauer's, attorney fees, (3) order directing him to reimburse petitioner for proceeds from an insurance settlement and tax refund received during the marriage, (4) order directing him to pay petitioner's medical bills, and (5) determination to set a 10-year period of rehabilitative maintenance.

We affirm in part and modify in part.

BACKGROUND

George and Marian Bauer were married on March 18, 1950. A petition for dissolution of marriage was filed by Marian on May 5, 1981. George filed a counterpetition on October 21, 1982. On November 16, 1983, a judgment for dissolution of marriage was entered by the circuit court of Cook County, reserving certain issues for later disposition., Following a contested hearing, a final judgment disposing of these remaining issues was entered by the trial court on May 9, 1984, supplementing the November 16, 1983, order. It is from the dispositions set forth in the orders of November 16, 1983, and May 9, 1984, that respondent now appeals.

The Bauers were married for 33 years, during which time they produced four children, all of whom are now emancipated. Marian, now 55 years old, had three years of college with a major in home economics. She has worked at various jobs during her marriage, the most recent of which was as a waitress in 1982. Prior to that time, she worked as a part-time salesperson, at a travel agency, and at a travel school.

At various times from 1973 through 1980, Marian worked in her husband's business, doing bookkeeping, filing, typing invoices, and

eventually functioning as a secretary-treasurer. After leaving the business, she attended travel school and took a course on the basics of operating a computer system commonly used by travel agencies. In 1979, Marian was hospitalized for alcoholism. She has since suffered relapses of the disease and continues to regularly attend meetings of Alcoholics Anonymous. She has also been hospitalized for sciatic nerve and blood pressure problems.

George Bauer has made his living as a salesman, and in 1973 he incorporated his own chemical distributing company, Bauer & Associates. In 1975, respondent went from a one-man business to incorporate with two other individuals under the name of Taurus-Bauer & Associates, Inc., continuing the same type of business. In 1980, respondent again began his own business, incorporating as George Bauer & Associates, Inc., and continued the same type of business. During this time, respondent has built up and retained reliable "high caliber" customer accounts.

Respondent introduced an expert, Arnold Horwich, a certified public accountant under his employ since 1978, to testify as to the value of respondent's business. Horwich stated that while there were several methods of valuation, methods such as book value and gross sales or gross profits would be inappropriate in a one-man business, such as George Bauer & Associates, Inc., where the business is completely tied into the abilities of George Bauer. Horwich appraised the value of the business from the point of resale value only, concluding that because it had no inventory and no assets, the business would have no resale value on the open market. He valued the business at $1,000, the cost of incorporation and the value of the capital stock.

Horwich testified that respondent has very good experience collecting cash accounts and that his clients are "high caliber" reliable accounts. After having examined respondent's books through March 1983, Horwich stated that based on a volume of approximately $120,000 to $150,000, respondent has been able to draw a profit margin of 20%. He further testified that the chemical distribution business was, generally, stable, although it fluctuated with the normal fluctuations of the economy.

Petitioner presented no expert to testify as to the value of the business. The trial court, however, had before it tax forms and testimony as to salaries earned by respondent. Additional tax forms were introduced to the reviewing court upon stipulation of the parties. This evidence disclosed taxable income for respondent's corporation for the years 1976, 1977, 1978, 1979, and 1981 as approximately $30,000, $38,000, $50,000, $38,000, and $23,000, respectively. Testi-

mony adduced at hearing revealed an increase in sales from 1980 to 1981 from $108,000 to $114,000, and a concurrent decline in the cost of goods of $4,000. Respondent testified that his then current salary was $20,000 a year.

Additional testimony revealed that respondent's corporation owns a car and three boats of limited value, the expenses of which are paid by the business. Funds expended by the corporation for these vehicles, as reflected on the 1981 tax return, totalled $12,000. The corporation also furnishes respondent with an expense account and other fringe benefits.

After reviewing the evidence, the trial court valued and distributed the marital property as follows:

Marian Bauer

| | |
|---|---:|
| Proceeds from the sale of the home | $64,000.00 |
| One-half proceeds from the sale of a house trailer | 850.00 |
| One-half value of stock | 1,918.50 |
| 1978 Mercury Marquis | 3,500.00 |
| Equity in insurance policy | 150.00 |
| Half equity in IRA account | 750.00 |
| Reimbursement for 1980 tax refund | 200.00 |
| One-half equity in townhome | 1,500.00 |
| Furniture in possession | 3,100.00 |
| Reimbursement for insurance settlement | 2,830.00 |
| | $78,798.50 |

In addition, the court ordered George Bauer to pay Marian's attorney fees of $7,500 and her medical bills totalling $2,287.49.

George Bauer

| | |
|---|---:|
| Shares in George Bauer & Associates | $66,000.00 |
| One-half value of stock | 1,918.50 |
| Equity in insurance policy | 150.00 |
| Half equity in IRA account | 750.00 |
| One-half equity in townhome | 1,500.00 |
| Furniture in possession | 475.00 |
| | $70,793.50 |

In addition, George Bauer was ordered to pay his own attorney fees of $4,231.65, and the other fees and bills as stated above, resulting in a debt of $11,055.64. The judgment also provided for a 10-year period of rehabilitative maintenance in the amount of $400 a month.

Respondent now appeals from those provisions of the dissolution

judgment in which the trial court valued his business, directed him to pay his wife's attorney fees, ordered him to reimburse his wife for funds received from an insurance settlement and a tax refund, directed him to pay medical bills incurred by Marian during the marriage, and set a 10-year rehabilitative maintenance period. The other provisions of the distribution set forth in the trial court's order are not contended as error.

OPINION

I

Respondent's first contention on appeal is that the trial court's valuation of his business, George Bauer & Associates, Inc., at $66,000 was an abuse of discretion in light of the testimony of his expert, who valued the business at $1,000 and the fact that petitioner presented no evidence as to valuation. Petitioner maintains that the trial court's valuation was not so unreasonable as to be an abuse of discretion in light of the expert's lack of credibility and method of valuation and the testimony and exhibits submitted to the court. We find merit in petitioner's position.

We first address respondent's contention that the absence of any evidence presented by petitioner as to the value of the corporation mandates reversal and remand for a new hearing. This contention was addressed in *In re Marriage of Schaufelberger* (1983), 120 Ill. App. 3d 114, 457 N.E.2d 993, wherein the court, quoting from *In re Marriage of Smith* (1983), 114 Ill. App. 3d 47, 448 N.E.2d 545, refused to remand due to a lack of solid evidence of the value of certain property, reasoning as follows:

> "Reviewing courts cannot continue to reverse and remand dissolution cases where the parties have had an adequate opportunity to introduce evidence but have failed to do so. Parties should not be allowed to benefit on review from their failure to introduce evidence at trial. [Citations.] Remanding cases such as the one before us would only protract the litigation and clog the trial courts with issues which should have been disposed of at the initial hearing." 114 Ill. App. 3d 47, 54-55.

■ The precise rules for valuing a closely held corporation cannot be laid down. (*In re Marriage of Mitchell* (1981), 103 Ill. App. 3d 242, 430 N.E.2d 716.) In spite of the fact that a closely held corporation is without established market value, it nevertheless possesses an ascertainable value with respect to the division of marital property. (*In re Marriage of White* (1981), 98 Ill. App. 3d 380, 424

N.E.2d 421.) Goodwill is recognized as a business asset, and it figures significantly into the valuation of a business. (*Board of Trade v. Dow Jones & Co.* (1982), 108 Ill. App. 3d 681, 439 N.E.2d 526.) Moreover, in instances such as the present, where the worth of a business and its future earnings are determined largely by the contributions and personal services made by plaintiff, definite valuation of the business is not required. *In re Marriage of Greenberg* (1981), 102 Ill. App. 3d 938, 429 N.E.2d 1334.

The trial court, in determining the value of the business, explicated several factors it took into consideration. These factors included the nature of the business, the history of the enterprise from its inception, the economic outlook in general and the earnings of the business. The trial court also considered the unique nature and valuation of a personal services business and rejected the testimony as to valuation and the valuation method used by respondent's expert as unreasonable in light of the salaries earned by respondent, the expense accounts and entertainment costs, and other expenses absorbed by the corporation.

In reviewing a property distribution upon dissolution of marriage, an abuse of discretion will be found only where no reasonable person would take the view adopted by the trial court. (*In re Marriage of Schaufelberger* (1983), 120 Ill. App. 3d 114, 457 N.E.2d 993.) The trial court here had before it evidence of an on-going business with a reliable and established clientele, goodwill, an increase in sales from 1980 to 1981, and a stable economic picture. The business had furnished respondent and his family with a comfortable living and lifestyle for over five years prior to valuation and had even provided respondent's son with a clientele sufficient to enable him to start a competing business. Considering these factors, the trial court valued respondent's business at $66,000. We do not find this value to be one with which no reasonable person would agree. We therefore find that the trial court did not abuse its discretion in determining valuation of the business at $66,000.

## II

Respondent next contends that the trial court erred in directing him to pay his wife's attorney fees in the amount of $7,500. He asserts that he has no ability to pay this fee award and the other debts he is obligated to pay under the judgment. He further asserts that his wife has the only substantial cash asset, the proceeds from the sale of the marital home, and is therefore in a better position to pay her own attorney's fees. We agree.

■■ ■ A party seeking an award of attorney fees in a dissolution of marriage case must show financial inability to pay the fees and the financial ability of the other spouse to do so. (*In re Marriage of Hopkins* (1982), 106 Ill. App. 3d 135, 435 N.E.2d 897.) Financial inability does not mean destitution; it is sufficient to support an award of fees that disbursement of the individual's funds would exhaust the protesting spouse's estate, or strip him/her of a means of support and undermine his/her economic stability. (*In re Marriage of Rossi* (1983), 113 Ill. App. 3d 55, 446 N.E.2d 1198.) Attorney fees are, however, the primary obligation of the party for whom the services are rendered. *In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 411 N.E.2d 947.

In the instant case, Marian Bauer received a cash award of approximately $70,000. In addition, she has been awarded $400 a month in rehabilitative maintenance for a period of 10 years. She is not without the capacity to eventually acquire the training that could enable her to earn future income. The attorney fees awarded her attorney were in the sum of $7,500. This sum is little more than 10% of the cash award she is receiving.

■■ Respondent, who is currently earning $400 per week, received little or no cash award from the dissolution judgment. In addition he owes his own attorney $4,231.65 in fees and is obligated to pay over $10,000 to petitioner. In light of these facts, we find that petitioner has failed to carry her burden of proving either her financial inability to pay her own attorney fees or her husband's ability to pay them for her. We therefore find that the trial court erred in ordering George Bauer to pay his wife's attorney fees, and we modify the order to relieve him of that obligation.

### III

Respondent next contends that the trial court erred in directing him to reimburse his wife for half the proceeds received during the marriage from an insurance settlement arising from a burglary within the marital residence. The majority of these funds were used to pay off a marital debt, a loan made to the Bauers by George's father to help George start his business. The balance of the funds was expended on living expenses such as telephone, doctor, and gasoline bills. Petitioner claims that these funds, rather than being expended to pay marital debts and on living expenses, were dissipated by respondent. We, however, find no evidence of dissipation.

■■ ■ Dissipation of marital assets occurs when a spouse uses marital property for his or her own benefit for a purpose unrelated

to the marriage while the marriage is breaking down. (*In re Marriage of Sevon* (1983), 117 Ill. App. 3d 313, 453 N.E.2d 866.) While settlement proceeds received by a spouse are in fact marital assets, where such proceeds are expended by the spouse on living expenses they no longer exist as a marital asset and thus cannot be apportioned as marital property under section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 503). *In re Marriage of Kundit* (1982), 107 Ill. App. 3d 310, 437 N.E.2d 777.

■ Here, the $5,960.93 in insurance proceeds was acquired as a marital asset and largely used to pay off a loan made to the couple for the purpose of starting a business. George Bauer testified that both he and his wife agreed to use the funds to repay the loan. The balance of the funds was used to pay family debts and bills. They no longer exist as a marital asset, and thus it was improper for the trial court to direct respondent to reimburse petitioner for these expended funds. We therefore modify the judgment to the extent that respondent is ordered to pay petitioner $2,830 in reimbursement for the already expended insurance proceeds from the settlement.

■ Respondent, in his brief, also contends that the trial court erred in directing him to pay petitioner $200 for funds received from a 1980 tax refund. At oral argument, counsel for petitioner conceded and the record discloses that the dissolution judgment is in error, and that it is petitioner who must pay respondent $200. This finding is based on the undisputed fact that a 1980 tax refund was received by the Bauers in the amount of $2,402.17, of which George took $1,000 and Marian took $1,400. The trial court, in the hearing held on September 13, 1983, ordered Marian Bauer to pay respondent $200.

Finding that the judgment decree does not conform with the trial court's order, we modify the decree to so conform and direct petitioner to pay to respondent the sum of $200.

IV

■ Plaintiff next contends that the trial court erred in directing him to pay medical bills incurred by petitioner in the amount of $2,287.49. The trial court found that respondent should have and could have obtained insurance coverage for petitioner and that petitioner, after having entered the hospital for treatment, had no notice of the fact that she was not covered. Consequently, petitioner was forced to leave the hospital prior to the end of treatment in order to obtain money to provide hospitalization coverage.

Respondent claims that he, in good faith, applied for and believed he had obtained insurance coverage for himself, petitioner, and two other individuals as a group. The deposit paid to the insurance company was by way of check issued by respondent's corporation. The policy issued, covering only respondent and one of the other applicants. Respondent was informed that due to petitioner's pre-existing condition, she was uninsurable under the policy. At that time, petitioner had entered the hospital for treatment. Ultimately, respondent was refunded his deposit, and no coverage issued.

As the record clearly reflects, respondent's failure to obtain insurance coverage for petitioner was inadvertent, involved no bad faith, and in fact resulted despite his efforts to the contrary. It is also clear, however, that he felt the obligation to provide coverage for his wife, and that petitioner entered the hospital relying on her husband's representations that costs would be covered. In light of all of these circumstances, we find that the trial court's result, placing the sole blame for petitioner's lack of insurance coverage entirely on respondent, is inequitable and unreasonable.

Balancing the equities, we conclude that the debt incurred by petitioner's medical bills should be apportioned between the parties. We therefore modify the dissolution decree to reflect this equal apportionment, such that respondent is obligated to pay petitioner one-half of the bills or the sum of $1,143.75.

## V

Respondent's final contention on appeal is that the trial court abused its discretion in setting a 10-year rehabilitative maintenance period. We find no such abuse of discretion under the instant circumstances.

The relevant factors to be considered by the court in making a determination of maintenance are set forth in section 504(b) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 504(b)) as follows:

"(1) the financial resources of the party seeking maintenance *** and his ability to meet his needs independently;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and physical and emotional condition of both parties; and

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance."

The practice notes to section 504, in elaboration of subsection (b)(4) (Ill. Rev. Stat. 1983, ch. 40, par. 504(b)(4)), explain that

"*** courts have given particularly careful attention to the duration of the marriage, especially as it relates to other factors including the standard of living and employability, in determining the amount and duration of the maintenance award. Where a spouse has not worked outside the home or has worked at jobs that did not further the development of any particular employment related skills, courts will frequently consider that circumstance an important factor in awarding maintenance, particularly where the marriage is of long duration. [Citations.]" Ill. Ann. Stat., ch. 40, par. 504(b)(4), Supplement to Historical & Practice Notes, at 129 (Smith-Hurd Supp. 1985).

Respondent concedes that petitioner is entitled to rehabilitative maintenance of some duration; it is the 10-year duration that he protests. In light of petitioner's age, history of alcoholism, and insufficient training for particular employment; and considering the comfortable standard of living to which she has grown accustomed, and the 33-year duration of the marriage, we· find that the trial court's determination to set a 10-year rehabilitative maintenance period was not an abuse of discretion.

In addition, both the trial court and the parties agree that under section 510 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 510(a)), as this is not an award of maintenance in gross, that the award may be modified during the 10-year period upon a showing of a substantial change in circumstances. We therefore affirm the award to petitioner of rehabilitative maintenance in the sum of $400 a month for a period of 10 years.

For all of the foregoing reasons coupled with the authority granted this court under Supreme Court Rule 366 (73 Ill. 2d R. 366), we affirm and modify the judgment for dissolution of marriage entered by the trial court on November 16, 1983, and amended by supplemental order entered on May 10, 1984, as follows: we affirm (1) the trial court's valuation of respondent's business and (2) the setting of a 10-year rehabilitative maintenance period; we modify (3) the provision directing respondent to pay petitioner's attorney fees and relieve him of that obligation, (4) the provision directing respondent to reimburse petitioner for proceeds received from an in-

surance settlement and (5) from a 1980 tax refund and relieve him of those obligations, and direct petitioner to reimburse respondent in the amount of $100, and (6) the provision directing respondent to pay petitioner $2,287.44 for medical bills and direct him to pay half that amount or $1,143.75.

Affirmed in part and modified in part.

JOHNSON, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:

I respectfully dissent from the majority's conclusion that the trial court was correct in valuing the husband's business at $66,000. The husband presented the only evidence concerning the value of the business. His expert's testimony was that the business had no inventory, no assets, no accounts receivables and was basically a function of the husband's ability to generate income. He concluded that as the value of the business was largely determined by the contributions and services made by the husband, the business had no resale value on the open market. Consequently, the business was worth only $1,000, the cost of incorporation and the value of the capital stock. Thus, the value of the business to the husband is, in effect, no different than the value of a salary to an employee. If the husband dies, retires, or becomes disabled the ability to generate income evaporates.

Further, the trial court's method of valuation used in the instant case was erroneous. As the value of the business is solely a function of the husband's ability to generate income, the salary he draws was already taken into account and disposed of by way of the maintenance award ordered by the trial court. The result, in effect, double counts the husband's ability to earn income. See *In re Marriage of Wilder* (1984), 122 Ill. App. 3d 338, 347-48, 461 N.E.2d 447.

I would remand the matter to the circuit court to reconsider its judgment in light of the above.