DONNA M. MAKAR, Petitioner-Appellant and Counterrespondent-Appellant, v. RUSSELL K. MAKAR, Respondent-Appellee and Counterpetitioner-Appellee (Lorren Makar, Third-Party Petitioner-Appellee; Donna M. Makar et al., Third-Party Respondents-Appellants).

First District (6th Division)   No. 1—89—2463

Opinion filed March 22, 1991.

Fritzshall & Gleason, of Chicago, for appellant Donna Makar.

Brian W. Carey, of Chicago, for appellee Lorren Makar.

Haas & McLennan, of Wheaton (Douglas L. Haas and Mary Lou McLennan, of counsel), for Russell Makar.

JUSTICE EGAN delivered the opinion of the court:

A petition for dissolution of marriage was filed by Donna Makar (Petitioner or Donna) against Russell Makar (Respondent or Russell) alleging physical cruelty. Lorren Makar (Intervenor or Lorren), the step-father of Russell, filed an intervening petition seeking a share of the award of the marital assets. The parties had one major asset, which was a home purchased on March 20, 1984. Donna, Russell and Lorren owned the home in co-tenancy. Donna and Russell also had a minor child, Frederick Makar.

The appraised value of the home was $90,000; the mortgage was $47,536. Of the $42,464 equity in the home, $19,340 was awarded to Lorren, representing the amount he had given to Russell for mortgage payments; $23,124 was split between Lorren, Donna and Russell. Lorren received a total of $27,048; Donna and Russell each received $7,708. Donna has accepted her share. Custody of the minor child was awarded to Russell.[1] Donna was required to pay child support in the sum of $140 per month or 20% of her net take-home pay, whichever was greater. She maintains that the division of the assets of the home was contrary to law and that the award of child support and the custody award were against the manifest of the evidence.

The parties were married December 5, 1981; and Frederick Makar was born on November 20, 1982. On March 20, 1984, Donna and Russell purchased a home at 200 West Kennedy, Streamwood, Illinois. The intervenor, Lorren, gave Russell approximately $8,000 toward the purchase of the house. Donna and Russell together saved $4,000 the first two years of their marriage and used that as part of the down payment on the home. Donna, Russell and Lorren were joint

---

[1] The order provided for "liberal visitation" between Donna and Frederick. Donna does not contest the visitation order.

tenants in title to the home, but only Donna and Russell were occupants. During 1985 Lorren started to assist Donna and Russell in their living expenses mainly by helping them pay their mortgage. In May 1986, with the mortgage in default, no payments having been made for several months, Lorren began making the full mortgage payment by giving checks to Russell; Russell would deposit the checks in his account, and he would make the mortgage payments. Lorren testified that he had given Russell $19,340 for mortgage payments during the course of the marriage. Donna does not dispute this figure.

Donna moved out of the home in February 1986 and filed her petition in March 1986. Russell continued to live in the home and still did as of the time of oral argument in this court.

From March 1986 through September 1987, Donna was the custodial parent of Frederick by court order and, in effect, shared custody with Russell. She did not receive any child support from Russell during that time. However, in September 1987 after a contested hearing, Donna was awarded full temporary custody of Frederick and was awarded $125 per month in child support. Donna retained custody of the child until the final judgment of the court was entered.

Donna first contends that the judge erred in the award given to the intervenor, Lorren; she maintains that Lorren was merely protecting his own one-third interest in the home when he made mortgage payments for 27 or 28 months and thus was liable for one-third of the mortgage payments which included interest, principal and taxes that were paid. She concludes that Lorren was entitled to only two-thirds of· the $19,340 awarded or, alternatively, that the entire $19,340 paid by Lorren should be deemed a gift.

■ We first reject Donna's alternative argument that the $19,340 paid by Lorren was a gift. The burden of proving a gift is the responsibility of the donee, in this case, Donna. (*Keshner v. Keshner* (1941), 376 Ill. 354, 33 N.E.2d 877.) Stated briefly, she has not submitted any evidence to support a finding of a gift by Lorren. The only evidence that could be considered relevant on the question of donative intent was the fact that Lorren insisted that he be named a co-tenant in title. That fact militates against any donative intent.

■ Donna's claim that Lorren received a disproportionately high share of the award must also be rejected. By her reckoning, Lorren should have received only two-thirds of $19,340 ($12,893) plus one-third of the available balance of $29,571 ($9,857) for a total of $21,750. She argues that Lorren, by law, would have been responsible for one-third of the mortgage payments. In support of her argument she cites *Gilmore v. Gilmore* (1975), 28 Ill. App. 3d 36, 328 N.E.2d

562. In that case, the court recognized that, as a general proposition of law in joint tenancy, co-tenants are equally liable for the cost of necessary repairs as well as payment of the mortgage and real estate taxes and that the rule applies regardless of the fact that only one tenant may be in actual possession of the property because such expenditures protect the property from loss or damage and thus all co-tenants benefit.

■ The applicability of *Gilmore*, decided before the enactment of the Dissolution of Marriage Act of 1977, has been questioned. (See *In re Marriage of Fleming* (1980), 80 Ill. App. 3d 1006, 400 N.E.2d 625.) But whether it is applicable we need not decide, because we have determined that the amount of money received by Lorren, accepting Donna's argument, was proper. As noted, Donna agrees that Lorren should receive two-thirds of the $19,340 ($12,893) he gave for mortgage payments and $9,857 for his one-third of the available balance for a total of $21,750. But, as Lorren points out, she ignores the $8,000 advanced by Lorren for the purchase of the home. Donna has not responded to the argument of Lorren that, even accepting her position, Lorren would have been entitled to $29,750, which would be $2,702 more than he actually received. Donna has also not responded to Lorren's argument that she may not complain of the award because she accepted the benefits of the award and executed a quitclaim deed to the property to Lorren and Russell. (See *Katz v. Katz* (1973), 10 Ill. App. 3d 39, 293 N.E.2d 904.) The judge did not err in granting an award of $27,048 to the intervenor.

■ Donna next maintains that the award to Russell should be reduced by $6,446. She reasons that Russell paid no rent or any other expenses for the period of time that Lorren was paying the $19,340. The $6,446 represents the one-third amount that Donna maintains Russell should have been paying. She concludes that that amount represents a dissipation of the marital assets by Russell. We disagree. Whatever the benefit Russell might have enjoyed in living rent-free may be, it is not dissipation under the law. Dissipation is the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at the time when the marriage is undergoing an irreconcilable breakdown. (*In re Marriage of Sevon* (1983), 117 Ill. App. 3d 313, 453 N.E.2d 866.) The action of Russell in living in the home without paying the rent cannot be considered the use of marital property for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown. For these reasons, that part of the judgment fixing the distribution of the marital assets is affirmed.

■ Donna next contends that the judge abused his discretion when he ordered that she pay $140 a month or 20% of her net income, whichever is greater, for child support. We agree with Donna's argument for two reasons. Since the judge exceeded the guidelines set forth in section 505 of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 505), he was not obliged to make express findings explaining his reasons for doing so. In this case, however, he did explain his reasons for granting custody to Russell. The judge noted the strength of Russell's financial position and the weakness of Donna's. He said that Donna's living expenses exceeded her income. Under the circumstances the award of child support was against the manifest weight of the evidence.

Moreover, the attorney for Russell conceded Donna's weak financial position and expressly agreed that the issue of child support should be reserved for a later date. He said this:

"Now, Judge, I would briefly like to go over the other issues. With custody to Russell, Judge, on the issue of child support, I don't think that Mrs. Makar has the ability to pay child support. So what I am going to suggest, Judge, is a reservation of child support from Donna Makar to Russell."

The judge recognized, when deciding the question of custody, that Donna's financial position was weak, and he gave no reason for ignoring the agreement of Russell to reserve the question of child support. For these reasons, the order awarding child support is vacated.

■ Donna's last contention is that the judge abused his discretion in-awarding sole custody of Frederick to Russell. The judge found that both parents were fit and proper to have custody of the child. He made numerous findings of fact on the question of custody. He pointed out that Russell had a regular, full-time job and retained the marital home. The child expressed the desire to live with his father. There was also a positive relationship between the child and Lorren. Donna had had five jobs in 36 months. She had quit three of them and had been fired from two. She had lived in four different places over a 26-month period. She was earning no more than $500 a month from her present employment, but she had hopes of being promoted. At the time she was earning commissions from her present employer, she was accepting unemployment compensation from the State of Illinois. She had another 13-year-old son from a previous marriage who lived with her, but she had given up custody of that child to his father. The judge expressed doubts that she was likely to be promoted. He also expressed difficulty in reconciling Donna's "income, bank deposits and living expenses."

As is so often the case, the evidence was not all one-sided, but we cannot say that the judge's decision was against the manifest weight of the evidence or that he abused his discretion. *In re Custody of Blonsky* (1980), 84 Ill. App. 3d 810, 405 N.E.2d 1112.

■ Donna also argues that the judge improperly considered evidence that had been stricken. Russell's attorney asked Donna a question about sexual relations she had had with another man while she was separated from Russell. The judge sustained an objection by Donna's attorney. The judge later permitted cross-examination of an investigator of the Cook County Supportive System concerning the relationship between Donna and the other man. However, he did not permit any questions about their sexual relations. During his explanation of his final order, the judge said that Donna had admitted having sexual relations with another man "between 15-20 times over the last two years." The judge was mistaken, but his later remarks showed that he did not attach any significance to the fact that Donna had sexual relations with the other man. He emphasized that there was no evidence to show that Frederick was aware of their sexual relationship. Any error, therefore, was harmless. For these reasons, that part of the judgment granting custody to Russell is affirmed.

Judgment affirmed in part and vacated in part.

McNAMARA and LaPORTA, JJ., concur.