*In re* MARRIAGE OF CLARICE ROSSI, Petitioner-Appellee and Cross-Appellant, and JOSEPH ROSSI, Respondent-Appellant and Cross-Appellee.

First District (1st Division)   No. 81—2942

Opinion filed February 22, 1983.—Rehearing denied April 4, 1983.

Barbara B. Hirsch, of Chicago, for appellant.

Junie L. Sinson and Robert A. McNees, both of Barclay, Damisch & Sinson, Ltd., of Chicago, for appellee.

JUSTICE McGLOON delivered the opinion of the court:

Respondent Joseph Rossi appeals and petitioner Clarice Rossi cross-appeals from the financial and property dispositions of a supplemental judgment for dissolution of marriage entered December 1, 1981.

On appeal, respondent contends (1) that the judgment is contrary to law and equity because it is punitive; (2) that the trial court's findings and orders with respect to the designation and valuation of certain assets are erroneous; and (3) that the trial court's order awarding petitioner's attorney fees and costs of $42,864.82 to be paid by respondent is erroneous.

On cross-appeal, petitioner contends that the property distribution is erroneous and the award of attorney fees is insufficient.

We affirm in part, reverse in part and remand with directions.

On January 30, 1979, judgment for dissolution of marriage of respondent and petitioner was entered. The matters of property settlement and maintenance were continued. On June 22, 1981, the circuit court of Cook County entered its memorandum opinion on these issues, reserving the issue of assessment of petitioner's attorney fees. The trial court entered its final supplemental judgment for dissolution of marriage on December 1, 1981, and respondent appeals.

The parties were married for 17 years prior to separating in 1978. Both parties are in their early forties. As a result of the marriage, four children were born. Two are currently residing with petitioner.

At the time of the marriage, petitioner was an elementary school teacher. She ceased teaching to raise the parties' family. Respondent held various jobs during the marriage. In 1971, respondent began managing Progressive Bronze Works, Inc. (PBW), a business which manufactures brass ecclesiastical supplies. Respondent is currently president and 100% shareholder of PBW.

The judgment from which this appeal and cross-appeal are taken distributed the assets as follows. Respondent was awarded: (1) 100% of the stock of PBW valued at $600,000; (2) the real estate on which PBW is situated, known as the Spaulding Avenue property, with equity valued at $73,000; (3) the beneficial interest in PBW's pension fund, established by respondent, which had $20,184 on deposit; (4) three real estate limited partnerships for tax shelter purposes, in which respondent invested $88,180 after the judgment of dissolution was entered and which the trial court designated as non-marital property of respondent; (5) 100% of the stock of Exchem Corporation valued at $3,000; (6) furniture and personalty valued at $5,000.

Petitioner was awarded: (1) the marital residence located in Park Ridge, Illinois, with a gross equity of $130,000, subject to all mortgage payments and real estate taxes accruing after June 22, 1981; (2) $67,000, representing the sale proceeds, held in escrow, of a lot at 990 Rose Street, Park Ridge, Illinois; (3) various shares of stock held in respondent's name valued at $47,700 on January 30, 1979; (4) sole title to a vacant lot in Delavan, Wisconsin, valued at $35,000 and subject to real estate taxes after June 22, 1981; (5) $25,200 representing the sale proceeds, held in escrow, of a 32-foot boat purchased by respondent in 1976; and (6) furniture and personalty valued at $15,000.

Respondent was also ordered to pay petitioner the principal amount of $100,000 in five equal installments plus interest at a rate of 8% per annum. The court further ordered respondent to pay $2,500 per month unallocated maintenance and child support, all extraordinary medical and dental expenses of the minor children and tuition for any of the children who desire to attend college. Respondent was also ordered to keep a $30,000 life insurance policy in effect so long as his responsibilities under the judgment had not been fulfilled. Finally, respondent was ordered to pay petitioner's attorney fees and costs of $42,864.82.

First, respondent contends that the December 1, 1981, order is punitive and therefore contrary to law and equity. To support this contention, he argues that the order takes all his assets, with the exception of the Spaulding Avenue property, leaving him destitute. We disagree.

The total value of the marital assets, as set forth above, equals $1,121,084. Of this amount, respondent was awarded approximately $701,185 or 63%. The total value of petitioner's award was approximately $419,900 or 37%. During oral arguments before this panel, attorneys for both parties reiterated that they agreed with the court's valuation of the marital assets with the exception of the stock of PBW. Therefore, assuming, *arguendo*, that the stock of PBW is worth its book value ($263,774), respondent still received 46% of the marital assets; if valued at its net worth ($357,014), respondent received 52%.

Section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Act) requires that the court shall divide marital property in just proportions considering all relevant factors. (Ill. Rev. Stat. 1981, ch. 40, par. 503(c).) Cases decided under the Act have established that an equitable division of marital property is not necessarily an equal one. (*In re Marriage of Borg* (1981), 96 Ill. App. 3d 282, 421 N.E.2d 214; *In re Marriage of Lloyd* (1980), 81 Ill. App. 3d 311, 401 N.E.2d 328.) The court can properly award one spouse a greater share where the relevant factors warrant such a result. *In re Marriage of Gustke* (1979), 78 Ill. App. 3d 274, 397 N.E.2d 146.

The apportionment of property by the trial court will not be disturbed in the absence of an abuse of discretion. Moreover, discretion is abused only if no reasonable person would take the view of the trial court. *In re Marriage of Borg* (1981), 96 Ill. App. 3d 282, 287, 421 N.E.2d 214, 218.

In the instant case, the distribution of property was clearly not against the manifest weight of the evidence nor an abuse of judicial discretion.

Following a lengthy trial on the matter, the trial judge recognized that unique circumstances were presented with regard to PBW and the Spaulding Avenue property. The court noted that these two assets alone comprised over 60% of the marital assets and were, in effect, the sole income producer for all concerned. The court pointed out that the award to respondent of the business (valued at $600,000) and the land resulted in a "lopsided division of marital property" in favor of respondent. However, the court reasoned that the best interests of all concerned were served by such an award because the corporation had thrived under the direction of respondent over the years he had operated it. Furthermore, the court attempted to equalize respondent's award by awarding petitioner the sum of $100,000. In light of these facts and statistics, we find that the trial court considered relevant factors in dividing the marital property and did not abuse its discretion.

In furtherance of respondent's argument that the property division is inequitable, he asserts that petitioner was awarded all of the liquid assets, leaving him with heavily encumbered illiquid assets. The requirements of section 503 of the Act necessarily encompass only those assets which the court has before it and those of which it is aware. (Ill. Rev. Stat. 1981, ch. 40, par. 503.) Using the values found by the trial court, the marital assets are 87% nonliquid. The court awarded respondent PBW and the Spaulding Avenue property rather than forcing its liquidation or dividing it. We have held that dividing a closely held corporation is particularly disadvantageous where it would require ongoing business associations between the parties. *In re Marriage of Sales* (1982), 106 Ill. App. 3d 378, 436 N.E.2d 23.

As noted above, said distribution benefited both parties. As president and chief operating officer of PBW, respondent has earned an annual salary ranging from $85,000 to $115,000 per year. The court was justified in awarding PBW to respondent. Moreover, there is nothing in the court's orders preventing respondent from liquidating the business if he so chooses.

Furthermore, we believe that the record supports the trial court's finding that respondent himself is responsible for destroying much of the liquidity by unilaterally transferring approximately $107,000 into nonliquid assets. He should not be heard to complain.

■ Second, respondent contends that the trial court erred in holding that PBW is a marital asset. Respondent's father founded PBW in 1935 and operated it until his death in October 1971. His will conveyed PBW into a testamentary trust for the benefit of respondent's mother. About three or four weeks after respondent's father's death, respondent was contacted by his mother and her attorney about purchasing PBW. At approximately the same time, respondent began managing PBW on a full-time basis. In 1972, respondent incorporated Design & Forms, Inc., a business which works in conjunction with PBW. Petitioner was the secretary of Design & Forms, Inc. Shortly after its incorporation, Design & Forms, Inc. purchased PBW. The purchase agreement was signed by petitioner, as secretary of Design & Forms, Inc.

To support this contention, respondent argues that the acquisition of PBW was merely the completion of his father's disposition scheme. He implies that his father left PBW in trust so that his mother could sell the business and receive proceeds for her support. This testimony is insufficient to establish that respondent received PBW by bequest, devise or descent. Furthermore, there is no evidence that respondent would have received PBW via the trust, into which it was conveyed,

since the terms of the trust were not offered into evidence. The purchase of the stock took place during the marriage and is presumed marital property (Ill. Rev. Stat. 1981, ch. 40, par. 503(a)), and therefore subject to apportionment. Respondent failed to demonstrate that the acquisition of PBW fits into one of the six exceptions declared in sections 503(a). (Ill. Rev. Stat. 1981, ch. 40, pars. 503(a)(1) through (6).) We find that the trial court properly held PBW to be a marital asset.

■ Third, respondent contends that the trial court erred in valuing PBW at $600,000. We begin by noting that we are unable to discern whether the trial court considered evidence subsequent to January 30, 1979 (the date the dissolution was entered). Petitioner's expert, Mr. McCulloch, testified that $600,000 was the value of the corporation as of January 1979. However, a balance sheet dated May 31, 1980, placing the corporation's net worth at $393,354, as well as other financial statements through June 1980, were admitted into evidence. The court also noted that the sales of the corporation grew to over a million dollars for the year ending June 1980. We are not unmindful that the economic outlook of the future and the capitalization of future earnings are important tools in the valuation of stock. However, facts existing on the valuation date should be the only ones taken into account. (Valuation of Shares of Closely Held Corporations, Tax Mgmt. (BNA), No. 22, at A-36 (1969).) In the instant case, there was data available as of the date of the dissolution. We find that the proper valuation date is January 30, 1979. To hold otherwise would have the effect of treating appreciation of the corporation subsequent to the dissolution as marital property contrary to section 503(c)(3) of the Act. Ill. Rev. Stat. 1981, ch. 40, par. 503(c)(3).

■ Arguing that McCulloch ignored both legal and business guidelines, respondent urges that the law recognizes the need for valuing a closely held corporation from book value. Respondent then criticizes the mathematical gymnastics performed by McCulloch in arriving at his valuation.

The Internal Revenue Service has recognized that the general approach, method and factors outlined in Revenue Ruling 59-60 may be relevant in determining the fair market value of business interests of any type. (Rev. Rul. 59-60, 1959-1 C.B. 237.) McCulloch relied on Revenue Ruling 59-60 in determining the value of PBW but failed to consider several factors including the nature of the business, the history of the business, the industry outlook, dividend paying capacity, and prior stock sales in comparison to listed companies. He believed these factors were either inapplicable or unascertainable. In an attempt to establish fair market value, McCulloch stated that earning capacity

was the more important factor to consider. He applied this factor by reviewing corporate tax returns and financial statements from a five-year period, selecting the two best years and ignoring the other years. Then he "normalized" earnings by eliminating the corporate pension plan and reducing respondent's salary. This was done in direct contravention of Revenue Ruling 59-60 which states that in analyzing the earning capacity of a company

> "***[d]etailed profit and loss statements should be obtained and considered for a representative period immediately prior to the [valuation date], preferably five or more years. *** Potential future income is a major factor in many valuations of closely-held stocks, and all information concerning past income which will be helpful in predicting the future should be secured." (Rev. Rul. 59-60, 1959-1 C.B. 237, 240-41.)

Throughout McCulloch's analysis of net sales, gross profits and operating expenses, he applied figures from only the two best years. Finally, McCulloch put a premium on respondent's 100% ownership and valued respondent's block of stock at 150%. This was done despite the fact that an unlisted closely held stock, in which trading is infrequent and which therefore lacks marketability, is less attractive than similar stock listed on the exchange. (*Central Trust Co. v. United States* (U.S. Ct. Cl. 1962), 305 F.2d 393.) Petitioner contends that the only testimony as to the fair cash market value was that of her expert, McCulloch. However, respondent's certified public accountant testified that the corporation's book value was $263,774 and supported his finding with certified financial statements.

Furthermore, the balance sheet for January 1979 placed the corporation's net worth at $357,014.

This court has held that the precise rules for determining the value of closely-held stock cannot be laid down. *In re Marriage of Mitchell* (1981), 103 Ill. App. 3d 242, 248, 430 N.E.2d 716, 720.

Stock is usually valued at its market value, "the price which a willing purchaser will pay to a willing seller in a voluntary transaction." (*In re Estate of Voss* (1973), 55 Ill. 2d 313, 315, 303 N.E.2d 9, 11; *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 635, 397 N.E.2d 488, 494.) Notably, market value is sometimes above and sometimes below the actual value of the stock. 55 Ill. 2d 313, 315; 78 Ill. App. 3d 627, 635.

From our review of the record, we cannot say that the methods used by petitioner's expert were proper. In light of the fact that respondent's certified public accountant placed the corporation's net worth at slightly over one-half of petitioner's valuation, we must re-

mand the cause for reconsideration of value of the stock of PBW. Further, to achieve a just apportionment, modification of the previously ordered distribution of marital property is hereby authorized as part of our mandate if, upon remand, such modification is dictated by the evidence elicited on the revaluation of the PBW stock. *In re Marriage of Boone* (1980), 86 Ill. App. 3d 250, 408 N.E.2d 96.

■ Fourth, respondent contends that in light of his inability to pay, the trial court erred in ordering him to pay petitioner's attorney $42,864.82 for attorney fees and costs. In a dissolution proceeding, the allowance of attorney fees rests within the sound discretion of the trial court. (*In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 439 N.E.2d 1005; *In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 421 N.E.2d 1308.) The party seeking the allowance of fees must show financial inability to pay and the ability of the other spouse to do so. (*Dwan.*) Financial inability to pay does not mean destitution. If disbursement of petitioner's funds would exhaust her estate to undermine her economic stability, the order directing respondent to pay attorney fees will be upheld. *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576.

In the instant case, the trial court found that due to the illiquidity problem caused by respondent, petitioner's only true income is the monthly maintenance and child support she receives. To require her to sell assets and completely deplete her cash reserves to pay attorney fees would defeat the trial court's proposed equitable distribution. Because respondent's ability for future earnings over the years is substantially greater than petitioner's, we find that the trial court did not abuse its discretion.

■ Turning next to respondent's contention that the fees awarded were excessive, we note that the criteria for determining the amount of fees concern:

> "the nature of the controversy; the question at issue; the significance or importance of the subject matter; the degree of the responsibility involved; the standing or skill of the person employed; the time and labor involved; and the relative financial positions of the parties." (*In re Marriage of Janetzke* (1981), 97 Ill. App. 3d 418, 423, 422 N.E.2d 914, 919.)

In addition, the fees allowed should be limited to an amount which provides fair compensation to the attorney and which are fair to the person required to pay. *In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 421 N.E.2d 1308; *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576.

Furthermore, the time charged must be necessary for proper han-

dling of all matters involved. In the event the court finds the hours claimed are the result of unnecessary, duplicative work efforts, it must reduce the excessive hours claimed. (*In re Marriage of Janetzke* (1981), 97 Ill. App. 3d 418, 424, 422 N.E.2d 914, 919.) Furthermore, where the trial court determines that an extensive expenditure of time and labor were required, it may limit the amount if the person required to pay lacks the ability to do so.

Application of the foregoing principles and the matrix of factors to be considered mandates our finding that the award of $42,864.82 in attorney fees and costs is excessive and must be reconsidered. The instant case is a simple one in that grounds, custody and visitation were never in issue. However, the property settlement, permanent support and maintenance was highly contested. There was a series of assignments and reassignments of the case to numerous judges in the domestic relations division before the case was finally tried. Petitioner's attorney appeared before Judge Monica Reynolds on 32 occasions between April 1980 and February 1981. During this period, respondent appealed two orders. Both appeals were dismissed. Judge Reynolds granted respondent's second motion for a change of venue on February 6, 1981, and petitioner filed a motion and related petition for writ of *mandamus* which was also denied and dismissed summarily. The case was finally tried before Judge Wayne Olson and took five days to complete.

We are not unmindful of the fact that an attorney using dilatory tactics designed to harass and frustrate the other party's pursuit of justice in an orderly manner may cause the opposing counsel to expend numerous hours of time in order to protect his client's interests. However, a party should not be held accountable for payment of duplicative work efforts resulting from such tactics.

Petitioner's attorneys' itemized petition requested $54,608.32 representing the balance of fees and costs incurred as follows: 304.5 hours at $125 an hour for both in and out of court services rendered by the partner principally responsible for handling the case, and 176.5 hours at $80 per hour for associate counsel's services.

An expert testifying for petitioner's attorneys established that reasonable compensation for the services such as those rendered in the instant case would be $125 to $200 per hour for a partner's time and $75 to $100 per hour for associate counsels' time. The trial judge found the hourly rate charged to be well within the area of fair and reasonable considering the factors established by numerous Illinois decisions in recent years. We do not dispute the trial judge's finding. Nor do we dispute the fact that the standing and skill of petitioners's

attorneys are well recognized.

After reviewing over 325 individual time records, the trial judge properly disallowed or reduced time charged for tax advice, waiting and telephone calls. We have also thoroughly reviewed the record and find that additional hours should be stricken or reduced as set forth below.

In *mandamus* proceedings damages and costs are not allowed unless the plaintiff succeeds in obtaining a judgment of *mandamus*. (Ill. Rev. Stat. 1981, ch. 87, par. 5.) In the instant case the *mandamus* petition was dismissed and the hours charged in relation to said matter should be stricken. Any time charged for the repeated presentation of identical motions should be stricken, as well as other time charged for duplicative work efforts. Finally, the trial court should reconsider respondent's ability to pay and adjust the fees accordingly.

In view of our disposition of the case, we need not address respondent's further arguments.

For the foregoing reasons, we affirm the trial court's finding that PBW was a marital asset. We reverse the trial court's finding that the fair market value of PBW on January 30, 1979, was $600,000 and remand the cause for a new hearing. Upon remand, if the court finds the value of PBW to be less than $600,000, the court may redistribute the marital property to achieve a more equitable distribution. Further, we affirm, in part, the trial court's finding that respondent shall pay petitioner's attorney fees, but reverse that part of the order awarding petitioner's attorneys $42,864.82. We remand the cause for further consideration consistent with this opinion.

Judgment affirmed in part, reversed in part; cause remanded.

GOLDBERG and O'CONNOR, JJ., concur.