*In re* MARRIAGE OF JANET CRABB RYAN, Plaintiff-Appellee, and MICHAEL JAMES RYAN, Defendant-Appellant.

First District (3rd Division)   No. 83—2458

Opinion filed December 4, 1985.

Alan M. Freedman and Bruce H. Bornstein, both of Freedman & Bornstein, and Jack Arfa, both of Chicago, for appellant.

Rinella & Rinella, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Defendant Michael James Ryan appeals from the portions of the judgment for dissolution of marriage relating to the distribution of marital property and the award of attorney fees to plaintiff Janet Crabb Ryan.

Plaintiff and defendant were married on June 5, 1976, in Northbrook. No children were born to the marriage; none were adopted. The parties separated in September 1981.

Plaintiff filed her petition for dissolution of marriage on September 25, 1981, alleging that defendant was guilty of extreme and repeated mental cruelty. She also alleged that through their joint efforts and contributions, the parties acquired various pieces of property including the marital residence on Janssen Street in Chicago, real estate in Florida and Arizona, and a business, Impulse Fasteners, Inc. Plaintiff requested that all of the above property be awarded to her; she requested no maintenance.

At the hearing on distribution of marital property, plaintiff testified that she was 33 years old and was employed as a real estate salesperson with Kaplan and Associates in Chicago. When plaintiff married defendant, she owned no real estate but had a Buick and two or three savings accounts totalling $10,000. She testified further that her savings were eventually used to renovate the marital residence (the Janssen Street property) and to contribute toward the purchase of two pieces of real estate: a one-third acre of vacant land in Arizona and a townhouse in Florida. Both pieces of property were sold prior to the hearing: the Arizona property sold for $46,500 and the Florida property sold for $76,000. As a result of the sales, the parties received $12,500 cash which was held in an escrow account and monthly income of $532 from the Arizona property and $135 from the Florida property. Plaintiff also testified that she and defendant lived in the marital residence for approximately two years before it was sold for $140,000. Lastly, plaintiff stated that her income from the beginning of 1983 to the date of the hearing in August 1983, was approximately $19,000 gross.

Defendant testified that he was president and chief executive officer of his inherited business, CSM Screws Company (CSM), which manufactures screws an rivets. Defendant owned 60 shares of the company, and his salary at CSM was more than $3,000 per month for the year 1983 up to the date of the August 1983 hearing. Defendant testified further that at the time of the August hearing, CSM had liabilities of $405,000 and a negative net worth of $13,849. Defendant

said he consulted attorneys regarding the filing of a Chapter 11 bankruptcy petition for reorganization in an effort to delay creditors until CSM was in a better financial position.

Defendant testified that he also operated Impulse Fasteners, Inc., a business which he, plaintiff and two others founded. He stated that the business owed the Internal Revenue Service (IRS) $25,000 for unpaid payroll taxes. Lastly, defendant stated that his monthly expenses included child support for two teenaged children from a previous marriage.

The record shows various debts that arose during the course of the marriage. Those debts amounted to approximately $103,000. After hearing the evidence, the court distributed the assets as follows. Plaintiff was awarded (1) the $32,000 unpaid balance of the proceeds of sale of the Arizona property secured by a mortgage and note payable at $532 per month, and (2) $6,175 cash representing half of a joint savings account and an escrow account. Defendant was awarded (1) the $12,000 unpaid balance of the proceeds of sale of the Florida property secured by a mortgage and note payable at $135 per month, with a payment of $11,789 due December 1984; (2) $6,175, the other half of the savings and escrow accounts; (3) Impulse Fasteners stock and CSM Corporation stock, neither of which was evaluated; and (4) Champion Parts stock valued at $1,000. In addition, the court ordered that the $12,500 cash proceeds from the sale of the Arizona and Florida properties be applied to defray the $25,000 IRS tax liability incurred by defendant and the Impulse Fasteners Company. Lastly, the court held defendant solely responsible for repaying the $103,000 debt which arose during the course of the marriage.

Subsequently, plaintiff's attorney filed a petition requesting that defendant pay plaintiff's total attorney fees, $7,500, plus $83 for court costs. At the hearing on the petition, defendant testified that as of August 1983, his salary was decreased to $2,000 per month as a result of a 30% pay cut taken by all salaried employees of CSM due to poor business conditions. Thereafter, the court ordered defendant to contribute $2,500 towards plaintiff's attorney fees.

Defendant argues that the trial court abused its discretion: (1) in dividing the marital property unequally in favor of plaintiff and (2) in ordering defendant to pay a portion of plaintiff's attorney fees. On the issue of the unequal distribution of marital property, defendant, citing *In re Marriage of Clearman* (1980), 85 Ill. App. 3d 584, 407 N.E.2d 189, maintains when the marital property is divided in substantial favor of one party, the division is facially unjust unless there are extraordinary circumstances.

■ Section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 503(c)) does not require a showing of extraordinary circumstances to justify an unequal distribution of marital property. The Act requires only that the court divide marital property in just proportions considering all relevant factors. (See Ill. Rev. Stat. 1983, ch. 40, pars. 503(d)(1) through (7).) Decisions construing the Act have established that an equitable division of marital property is not necessarily an equal one (*In re Marriage of Rossi* (1983), 113 Ill. App. 3d 55, 446 N.E.2d 1198; *In re Marriage of Borg* (1981), 96 Ill. App. 3d 282, 421 N.E.2d 214); thus, the court can properly award one spouse a greater share where the relevant factors warrant that result. *In re Marriage of Rossi* (1983), 113 Ill. App. 3d 55.

■ The trial court has broad discretion under the Act, and its apportionment of property will not be disturbed absent an abuse of that discretion. (*In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 441 N.E.2d 336.) An abuse of discretion occurs only when no reasonable man would take the view of the trial court. (*In re Marriage of Rossi* (1983), 113 Ill. App. 3d 55.) We believe the trial court's distribution of marital assets and its allocation of debts are justified under the Act. *In re Marriage of Rossi* (1983), 113 Ill. App. 3d 55; *In re Marriage of Borg* (1981), 96 Ill. App. 3d 282.

■ The gravamen of defendant's argument is directed toward the court's allocation of the $103,000 debt. A detailed appraisal of the amounts and the structure of those debts will aid in understanding why the trial court held defendant solely responsible for their repayment.

The evidence shows that $25,000 of the debt consisted of individual income taxes owed by defendant and delinquent payroll taxes of the Impulse Fasteners Company. As shown above, this $25,000 tax liability was defrayed in part by $12,500 of the marital assets. Approximately $1,500 of the total debt represented a 1981 IRS debt for interest and penalties incurred by plaintiff for late filing caused by defendant's failure[1] to provide her with documents to complete her return.

The amount of $62,500 of the $103,000 total debt was the balance due on a $149,000 loan borrowed by defendant from CSM. Defendant testified that he and plaintiff borrowed from CSM to renovate the marital residence and to make other investments. Defendant testified

---

[1]The record shows a contempt order against defendant based on that failure, ordering him to pay plaintiff's tax liability.

further that neither he nor plaintiff signed promissory notes for the loans. Plaintiff testified that she knew about the loans from CSM but she was unaware that they totalled well over $90,000.

The remainder of the debt, $27,400, was the balance due on a $30,000 loan defendant borrowed from his mother to finance the opening of Impulse Fasteners and to renovate the marital residence. Defendant testified that no promissory notes were signed for this loan.

We note that the overwhelming majority of the debts were created by defendant. Plaintiff was unaware of the extent of defendant's borrowing; nor did she have control over defendant's sporadic and unrestricted borrowing from his company. It is undisputed that the loans were used primarily to renovate the marital residence and to open Impulse Fasteners, but a substantial portion of those loans has been repaid ($87,500 to CSM and $2,570 to defendant's mother) with plaintiff contributing toward the payment. Moreover, the major debt[2] incurred in connection with the rehabilitation of the marital residence has been repaid, partly by plaintiff from her personal assets.

On these bases, we cannot say that the trial court's placing of responsibility for the remaining debts was improper. Furthermore, ordering plaintiff to pay money to defendant's company is inadvisable as it would require an unnecessary ongoing association between the parties. See *In re Marriage of Sales* (1982), 106 Ill. App. 3d 378, 436 N.E.2d 23.

We find additional support for the trial court's allocation of debts in the fact that defendant's earning ability is substantially greater than plaintiff's. (See Ill. Rev. Stat. 1983, ch. 40, pars. 503(d)(4), (7); *In re Marriage of Rossi* (1983), 113 Ill. App. 3d 55.) The record shows plaintiff's income during the period of the marriage as follows: from the beginning of 1983 to the hearing in August 1983, she earned approximately $19,000 gross. In 1981, she earned approximately $15,000 or more; in 1980, about $15,900 and in 1979, $5,000. These yearly figures indicate that as a real estate salesperson, plaintiff's potential to earn is, at best, limited. On the other hand, defendant has substantially greater potential to earn and to acquire capital assets as the president and chief executive officer of CSM. His duties entail controlling the day-to-day operations, purchasing and transfers of company stock, borrowing and lending. At the time of the hearing, defendant's income was over $36,000, almost double that of plaintiff.

---

[2]The amount of $60,457 was borrowed from Lake View Bank and repayment was completed after the closing date of the sale of the marital residence.

During the marriage he had earned approximately $75,000 for each year from 1978 to 1981. Defendant testified that CSM was encountering financial difficulty, but that he expected it to do better in the future.

We note, however, that it is difficult to determine the income or worth of an individual who operates his own business.[3] In view of defendant's earning potential and opportunity for acquisition of capital assets through his nonmarital property, we believe the court's decision is justified under the statute. (See Ill. Rev. Stat. 1983, ch. 40, pars. 503(d)(4), (7).) We find that the trial court considered relevant factors in dividing the marital property and in allocating the debts of the marriage.

■ Defendant also argues that the trial court abused its discretion in requiring him to contribute $2,500 toward plaintiff's attorney fees. Section 508(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 508(a)(3)) provides that the trial court may order either party to pay a reasonable amount for attorney fees necessarily incurred by the other party in any proceeding under the Act. An award of attorney fees is justified where the spouse seeking relief demonstrates (1) financial inability to pay, and (2) the ability of the other spouse to pay. (*Christian v. Christian* (1979), 69 Ill. App. 3d 450, 387 N.E.2d 1254.) Financial inability exists where payment would strip the person of the means of support and undermine her economic stability. (*In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 441 N.E.2d 336.) The trial court's decision will not be disturbed absent a clear abuse of discretion. *In re Marriage of Sevon* (1983), 117 Ill. App. 3d 313, 453 N.E.2d 866; *Christian v. Christian* (1979), 69 Ill. App. 3d 450.

In the case at bar, plaintiff failed to satisfy the first prong of the test, *i.e.*, that she is financially unable to pay her attorney fees. At the hearing on attorney fees, plaintiff introduced no evidence in support of her alleged inability to pay. There was no testimony concerning her monthly living expenses—rent, food, utilities, transportation, etc. Nor is there evidence of record revealing plaintiff's inability to pay her attorney fees. The record instead shows that, at the time of the hearing, plaintiff had a gross income of $19,000 per year; that under the court's distribution of marital property she was awarded the

---

[3]CSM has been in existence since 1945. With regard to the financial condition of the company, in 1981, gross profits were over 2 million; in 1982, gross sales were reduced by about $700,000 and for the first six months of 1983, gross sales were $580,000. At oral argument, it was adduced and unrebutted that the appreciated (fixed) assets of CSM were over $1 million and the liabilities were about $½ million.

balance of the sales proceeds due on the Arizona property in the form of a $32,550 note and mortgage from which she receives $538 per month; and that she is responsible for none of the marital debts and has no substantial debts of her own. ·

On the basis of the foregoing, it does not appear that requiring plaintiff to pay her own attorney fees will strip her of her means of support or undermine her economic stability. (*In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967.) We need not address the second question, defendant's ability to pay, as plaintiff has completely failed the burden of showing her inability to pay. Accordingly, we reverse the judgment of the trial court.

For the foregoing reasons, we affirm the trial court's judgment regarding the distribution of marital property and reverse its judgment for attorney fees.

Affirmed in part, reversed in part.

McGILLICUDDY and RIZZI, JJ., concur.