2023 IL App (1st) 221194-U

SECOND DIVISION
December 19, 2023

Nos. 1-22-1194 and 1-23-0010, Consolidated

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In re* the Marriage of | ) | Appeal from the |
| | ) | Circuit Court of |
| LOUISE BORNHOFEN, | ) | Cook County. |
| | ) | |
|     Petitioner-Appellant, | ) | |
| | ) | |
|     and | ) | No. 19 D 331168 |
| | ) | |
| GERALD BORNHOFEN, | ) | Honorable |
| | ) | Rossana P. Fernandez, |
|     Respondent-Appellee. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: The judgment of the circuit court of Cook County is affirmed; the trial court's selection of one expert's valuation method over another proposed by a competing expert was not an abuse of discretion; the expert's opinion adjudged credible by the trial court was based on accepted principles of law and was supported by the evidence; and in the interest of finality and judicial efficiency, the trial court did not abuse its discretion in declining to reopen proofs after the final date of the experts' valuation of the former marital business.

¶ 2    In December 2019, petitioner, Louise Bornhofen, filed a Petition for Dissolution of

Marriage against respondent, Gerald Bornhofen. In July 2022, the circuit court of Cook County

entered judgment on the petition. Louise filed postjudgment motions that the trial court denied as moot in light of the trial court's judgment for dissolution of marriage. Louise appeals, arguing the trial court abused its discretion in valuing a marital business, awarding maintenance, and refusing to consider Louise's postjudgment motions.

¶ 3    For the following reasons, we affirm the trial court's judgment.

¶ 4                                BACKGROUND

¶ 5    We repeat only those facts applicative to the issues on appeal. Beginning in September 2021 and continuing through December 2021 on various dates, the parties engaged in a trial of the petition for dissolution of marriage primarily on the issues of the valuation of the marital businesses: iTouch Biometrics, LLC and Polyad USA, the division of marital assets and liabilities, and the appropriateness, amount, and duration of maintenance.

¶ 6    On February 17, 2022, Louise filed a pleading titled "Motion to Supplement Trial Record with Evidence of a Significant Factor Which Has a Substantial Bearing on the Valuation of the Company." The motion claimed that Gerald "has sought to keep from Petitioner and the Court the actual profits of the marital business." The motion stated that comparing the profit and loss statements for iTouch from January 2021 and January 2022 showed a 78% increase in average monthly sales and a 301% increase in average monthly income with a profit on monthly sales of 39% and 66% respectively, implying that iTouch was earning a higher rate of profit on its sales in January 2022 than in January 2021 and stating that profit would "still go up." Louise attached the profit and loss statement for iTouch from January 1, 2021, through December 31, 2021, and January 2022, and prayed the court supplement the trial record with those statements.

¶ 7    Also on February 17, 2022, Louise filed "Petitioner's Attorneys' Petition for Rule to Show Cause: Violations of the Court's Order and Notice to the Court of Ethical Violations by

2

Respondent's Attorneys." In sum, the motion alleged that Gerald's attorneys had improper contact (without notifying Louise's attorney) and improperly shared trial transcripts (in violation of the court's order to exclude witnesses) with Louise's consultant witness. The motion prayed, in part, the trial court strike portions of Gerald's attorney's opening and closing arguments asserting that Louise's hiring, then firing, of the consultant witness as a testifying expert was "proof of Petitioner's 'shopping' for a valuation."

¶ 8      On May 18, 2022, Louise filed a pleading titled "Emergency Motion and for Sanctions: Husband Reveals Hidden iTouch Account." The May 2022 motion stated in pertinent part that Louise discovered that, contrary to the trial court's order, Gerald opened and "has been operating a hidden iTouch bank account." The motion claimed that Gerald had ordered unnecessary inventory and deposited funds into the account and, further, that iTouch maintained a second set of financial records on Monday.com.

¶ 9      On July 20, 2022, the circuit court of Cook County entered a judgment for the dissolution of the marriage of Louise and Gerald (occasionally Gerry) pursuant to the Illinois Marriage and Dissolution of Marriage Act (Act).

¶ 10     The judgment stated the court was able to assess the credibility of each witness, weigh the evidence in its totality, and review various stipulations entered by the parties. As it pertains to this appeal, the judgment stated the trial court heard the testimony of each party's business valuation expert. Dr. Adarsh Arora testified as a business valuation expert on behalf of Louise and Joseph Modica testified on behalf of Gerald. The court also heard testimony from current and former employees of iTouch and admitted certain exhibits into evidence. The trial court's judgment makes express findings concerning the credibility of the witnesses and the weight of their testimony. As it pertains to this appeal, the court found "all witnesses who testified to be

3

credible in differing degrees with the exception of Zane Kelly whom the Court finds was not credible or knowledgeable about the management or daily activities of iTouch ***." The court also found that two non-expert witnesses called during Louise's case-in-chief "added very little to the issue of valuation."

¶ 11 The trial court stated it reviewed statutory authority and applicable case law prior to making its findings and orders. The court found, in pertinent part, that at the time of the judgment Louise was residing in the former marital residence and Gerald was residing in a rental apartment in Chicago. The marriage produced three children, all of whom were emancipated.

¶ 12 As it pertains to this appeal, the trial court's judgment found that Louise was then employed as iTouch's bookkeeper, she was a licensed attorney, and Louise "has positive prospects for future employability." Louise stopped working as an attorney when their first child was born (in 1996). Gerald was President and CEO of iTouch and "has an ability to support himself through the continued function of handling and running the business of iTouch." The court found that source of income may continue steadily into the future without the need for Gerald to change his profession.

¶ 13 The parties entered stipulations as to the value of various intangible assets deemed marital property and marital liabilities. The trial court made findings regarding the value of the parties' personal property and vehicles, and miscellaneous assets. As for the real property considered marital property, the trial court found that per stipulation, the former marital residence had a fair market value of $760,000.00 and was encumbered by a home equity line of credit with a loan balance of $298,733.00 as of August 2021. A second residence in Cozumel, Mexico had a fair market value of $550,000.000 and was unencumbered.

¶ 14    The judgment states, and the appeal bears out, that the primary issue in this case is the valuation of the parties' business: iTouch. The court found that the parties then owned iTouch equally. iTouch "is a company that provides a biometric system to police departments, schools and other public sector clients." The company "is a full service biometrics (fingerprinting) company that sells a package to its clients which includes hardware, software, installation, maintenance and warrant services." However, "the software cannot be sold separately from the hardware."

¶ 15    Louise did not want to retain an interest in the business and wanted Gerald to buy her out. Gerald did want to keep the business at its fair market value if he could afford to do so. The parties agreed to this but disputed the value of the business. On that question the trial court "heard testimony from Gerry, Louise, Dr. Adarsh Arora and Joseph Modica." Modica "valued a 100% fair market value interest in iTouch at $1,166,100 as of April 30, 2021, and Dr. Arora valued iTouch at $5,140,000 as of July 30, 2021." The court found that Dr. Arora, Leslie's expert, "utilized an investment method of ascertaining the value of iTouch mostly based upon his own experience in buying and selling software-based companies." However, the court found that "Dr. Arora was not able to credibly establish that iTouch was primarily a software-based company for his comparisons to purely software-based companies." Later, the court found that it did not find iTouch to be a software-based company "and the record is devoid of any credible evidence that the software was ever sold separately from the hardware but rather intermingled such that they are intricately tied to one another."

¶ 16    The court rejected Dr. Arora's valuation, finding as follows:

"The Court finds that 750 ILCS 5/503 specifically indicated that all assets must be valued under the fair market value standard, and a closely held business

5

such as iTouch invariably begins with Revenue Rule 59-60 and the principles contained therein. As such, the Court does find that Dr. Arora's assessment is unreliable, not credible and based upon speculative criteria and methodology, simple not allowed under the [Act.]"

¶ 17    Contrarily, the trial court found that Modica, Gerald's valuation expert, "testified consistently as to each and every factor of Revenue Ruling 59-60 and valued iTouch under the fair market value standard which is consistent and required under the IMDMA." The court stated it considered "each and every factor outlined in Section 503 of the IMDMA, Revenue Ruling 59-60, all relevant evidence, testimony, transcripts and *** the respective credibility of each of the witnesses at trial." The court found that the fair market value of iTouch was $1,166,100, which is the value determined by Modica. The court stated that Modica's opinion was "the only credible fair market value opinion presented to the Court with proper foundation and basis."

¶ 18    The trial court awarded Gerald 100% interest in iTouch "at the fair market value determined by this Court of $1,166,100." The court ordered Gerald to "buy Louise out of her 50% share of the business in the amount of $583,050 *** in quarterly payments of $25,000." Based on the value of iTouch and the remainder of the marital estate the court found that the total value of the marital estate was $2,402,903. The court found that an equal division of the marital estate was justified and awarded each party approximately $1,201,453. The court also found that Louise has no impediments in gaining full-time employment but "will need some time to be fully on her feet so that she may be employed full-time in her position of choice without limit." The court found that "a maintenance award to Louise is appropriate" and that such award was in addition to the allocation of the marital estate.

¶ 19    Louise's allocated assets included the former marital residence with a stipulated equity of $461,267. The trial court also allocated Louise 100% interest in Polyad USA, LLC (at $0 fair market value), half the proceeds from the sale of an Aruba timeshare, $44,367 from Gerald "for equalization of marital property), and other tangible and intangible assets (that are not germane to the issues on appeal beyond comprising a 50% allocation of the total marital estate). The court also awarded Louise maintenance. The court's judgment indicates that in awarding maintenance the court considered that "Louse will be receiving approximately $363,918 in non-marital assets," and that she is able to work full-time as a lawyer or "in a number of other professions." The court found that "[a]lthough Louise has not been employed in the legal field for a period of time, *** her advanced degree, experience, age and intelligence provide her with a very positive employment outlook."

¶ 20    The trial court found that "the combined income of the parties is currently in excess of $500,000 gross." The court ordered Gerald to pay maintenance "in the amount of $7,000 a month *** taking into consideration *** an imputed annual gross income of $65,000 to Louise and an income of approximately $450,000 gross per year to Gerry ***." The court ordered that maintenance shall be reviewed after five years and that a reviewable term of maintenance was appropriate. The court also ordered that Louise "may file a Petition to Extend Maintenance no later than five (5) years from the date of entry of this Judgment." Specifically, the court ordered that Louise's right to maintenance beyond five years from the date of the judgment would be determined "if Louise files a Petition to Extend Maintenance." If Louise does not file that petition, she is barred from seeking or receiving maintenance for any time beyond the fifth year after the judgment.

7

¶ 21    The July 20, 2022, judgment also found that certain pleadings were rendered moot by the trial court's decision, including: "Petitioner's Moton to Supplement Trial Record with Evidence of Significant Factor Which Has a Substantial Bearing on the Valuations of the Company" and "Petitioner's Emergency Motion and for Sanctions: Husband Reveals Hidden iTouch Account."

¶ 22    This appeal followed.

¶ 23                                 ANALYSIS

¶ 24    Initially, Gerald asserts this court should find Louise's arguments forfeited for her failure to comply with various aspects of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). Gerald's concerns are not unfounded, but we decide not to find Louise's arguments all forfeited.

> "A reviewing court is entitled to the benefit of clearly defined issues with pertinent authority cited and a cohesive legal argument. [Citation.] The appellate court is not a depository in which an appellant may dump the entire matter of argument and research. [Citation.] Arguments that are not supported by citations to authority do not meet the requirements of Rule 341(h)(7) and are procedurally defaulted. [Citation.] ***
> When the procedural violations interfere with our review of the issue, we may exercise our discretion and strike a brief for failure to comply with the rules. [Citation.]" *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 11.

In this case, we believe we are able to understand and to provide meaningful review of Louise's contentions on appeal. We note that Louise's reply clearly articulates that this appeal "centers on the [alleged] error of the circuit court in understanding the evidence concerning iTouch's financial success and fair market value." For the reasons that follow, we find that rather than a misunderstanding, the trial court's judgment represents a considered exercise of the trial court's judgment to weigh the evidence from competing experts and determine what the court believed

was the appropriate methodology to value iTouch and that the trial court's determination in that regard was not an abuse of that discretion. Gerald's request to summarily affirm the trial court's judgment is denied.

¶ 25    Proceeding to the merits, this is an appeal of a property valuation and distribution in a dissolution of marriage judgment. "A determination of the value of marital property is the duty of the trial court and will not be reversed absent an abuse of discretion. [Citations.]" *In re Marriage of Weiss*, 129 Ill. App. 3d 166, 173 (1984). The trial court abuses its discretion in the valuation of marital property when "its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks and citations omitted.) *In re Marriage of Abu-Hashim*, 2014 IL App (1st) 122997, ¶ 22. An abuse of discretion by the trial court "in evaluating and apportioning certain marital assets" "requires reversal and remandment for a new trial with regard to these issues." *In re Marriage of Malters*, 133 Ill. App. 3d at 180.

¶ 26    On appeal, Louise argues the trial court's valuation of iTouch at $1,166,100 is against the manifest weight of the evidence (more appropriately, an abuse of discretion) because that valuation represents roughly one year of cash earnings. Louise argues the trial court's valuation was unreasonable, arbitrary, and not based on evidence." Louise claims specifically that "[t]o say that a company making $1,000,000 in cash earnings is worth approximately a $1,000,000 fails the common sense and 'insanity test' of valuation, as well as all applicable 'rules of thumb.' "

¶ 27    On the contrary, Louise argues, the evidence, in which she includes the evidence Louise proffered in her motion to supplement the trial record, which the trial court did not allow, "clearly presented a company with unique, proprietary software and successive years of doubling sales and profits on a cash basis." Louise claims the trial court "failed to understand the nature of

9

the iTouch business," which Louise repeatedly characterizes as "a software-based company." Louise claims the trial court "failed to understand how the software and maintenance contracts were the driving force behind iTouch's 40% profitability." Louise claims iTouch's growth in profit "comes from the *software* maintenance contracts and the scalability inherent in providing the *software* technical support." (Emphases added.) Louise argues, the trial court should have accepted her expert's valuation because of her expert's "extensive" experience valuing software companies. Finally, Louise complains the trial court erroneously believed the principles of Revenue Rule 59-60 must be applied.

¶ 28     "A trial court has broad discretion in the valuation and subsequent distribution of marital assets. [Citation.]" *In re Marriage of Malters*, 133 Ill. App. 3d at 180.

> "In determining whether a trial court has abused this discretion the
> question is *** did the trial court *** act arbitrarily without the employment of
> conscientious judgment or, in view of all the circumstances, exceed the bounds of
> reason and ignore recognized principles of law so that substantial injustice
> resulted. [Citation.] In short, in order to correctly evaluate marital assets the trial
> court must have before it competent evidence of value and its determination of
> value must be supported by that evidence. [Citation.]" *In re Marriage of Malters*,
> 133 Ill. App. 3d at 180.

"The Act only requires *** there be sufficient evidence of value in the record to allow review of the trial court's distribution." (Internal quotation marks and citations omitted.) *In re Marriage of McHenry*, 292 Ill. App. 3d 634, 638 (1997).

¶ 29     The trial court did not abuse its discretion when it valued iTouch. The trial court's valuation is based on recognized principles of law and competent evidence of value, and its

determination of value is supported by that evidence and reviewable by this court. *In re Marriage of Malters*, 133 Ill. App. 3d at 180. Louise does not dispute the cash flow approach is a recognized principle of law. This court has expressly recognized that the cash flow approach to calculate fair market value is "a common method of business valuation." *Gold v. Ziff Communications Co.*, 322 Ill. App. 3d 32, 58 (2001) (citing *Superior Investment & Development Corp. v. Devine,* 244 Ill. App. 3d 759, 768-69 (1993) ("approving use of discounted cash flow analysis")).

¶ 30    Nor do we find that the trial court erroneously believed the principles of Revenue Rule 59-60 must be applied. Section 503 of the Act states, in pertinent part, as follows: "In determining the value of assets or property under this Section, the court shall employ a fair market value standard." 750 ILCS 5/503(k) (West 2020).

"Precise rules for determining the value of closely held stock cannot be laid down, but rather all evidence reflecting the worth of the entity should be considered. (*In re Marriage of Rossi*, 113 Ill. App. 3d 55, 61 (1983); *In re Marriage of Mitchell*, 103 Ill. App. 3d 242, 248 (1981)). Both the future economic outlook and the capitalization of future earnings are important tools for valuing a closely held corporation. [Citation.] Conflicts in testimony regarding the value of marital assets in an action for dissolution are matters for the trier of fact, and a valuation within the range testified to by the parties' experts will not be disturbed on review." *In re Marriage of Olson*, 223 Ill. App. 3d 636, 646 (1992).

See also *In re Marriage of Liszka*, 2016 IL App (3d) 150238, ¶ 41 (quoting *In re Marriage of Gunn,* 233 Ill. App. 3d 165, 183 (1992) ("Placing a fair market value on the professional corporation is an art, not a science, and the court must rely on expert witnesses to assist it in this

difficult task. There is *no exact formula* that can be applied, so the trial court must rely on experts who may differ significantly in both methodology and valuation. The trial court must consider the relevant evidence before it; determine the credibility of the experts, the reasonableness of their testimony, the weight given to each of them, and their expertise in the particular area of valuation; and then determine fair market value.")).

¶ 31     The trial court followed section 503 of the Act. This court acknowledges that "[t]he Internal Revenue Service has recognized that the general approach, method and factors outlined in Revenue Ruling 59-60 may be relevant in determining the fair market value of business interests of any type. (Rev. Rul. 59-60, 1959-1 C.B. 237.)" *In re Marriage of Rossi*, 113 Ill. App. 3d 55, 60 (1983). The trial court in this case did state that "the fair market value standard, and a closely held business such as iTouch, invariably *begins* with Revenue Rule 59-60 and the principles contained therein." Nonetheless, the court went on to consider "all relevant evidence" of iTouch's value. *Olsen*, 223 Ill. App. 3d at 646. The court stated that in reaching its determination of the fair market value of iTouch, the court considered "each and every factor outlined in Section 503 of the IMDMA, Revenue Ruling 59-60, all relevant evidence, testimony, transcripts and *** the respective credibility of each of the witnesses at trial." Specifically, by implicitly adopting the cash flow approach to valuation used by Gerald's expert Modica, the trial court considered "the capitalization of future earnings." *Id*. The trial court did not rely on Revenue Ruling 59-60 as the sole or a mandatory basis for determining the fair market value of iTouch. The trial court's consideration of the factors outlined in Revenue Ruling 59-60 was appropriate. See *In re Marriage of Puls*, 268 Ill. App. 3d 882, 886 (1982) (rejecting valuation that followed only part of the formula in, *inter alia*, Revenue Ruling 59-60 and adopting valuation of expert who "followed the formula *** precisely").

¶ 32     The trial court's valuation is also supported by competent evidence of value. Gerald's expert, Modica, testified that he considered "the asset approach, the market approach and the income or cash flow approach." Modica determined that the cash flow approach was the most appropriate in this case. The cash flow approach is "the capitalizing of a *single period*, the cash flow of a *single period*." (Emphases added.) In that process, you are "taking a single period then capitalizing it into the future at a capitalization rate. Modica "fully and completely set forth in [his] report" the analysis of the capitalization of cash flow and determination of the capitalization rate.

¶ 33     Modica also testified that hardware, warranties, software, and technical support were "the largest sources of revenue for the company." Modica based his testimony on actual sales documents iTouch provided to him. Based on the data, Modica testified that "anywhere from 20 to 40 percent of the revenue is from technical support and software and it looks like 64 to— maybe 60, 60 to 70 is from hardware sales and warranties." iTouch predominately does live scan fingerprinting.

¶ 34     The fatal flaw in Louise's arguments is that the lynchpin on which it relies—that iTouch is a software company—is a false premise. The trial court expressly found that iTouch "is a full service biometrics (fingerprinting) company that sells a package to its clients which includes hardware, software, installation, maintenance and warrant services." However, "the software cannot be sold separately from the hardware." That determination by the trial court is supported by competent evidence.

¶ 35     Gerald is the CEO of iTouch. Gerald testified that iTouch has sold a handful of hardware units (scanners) but "virtually all" its sales are a "turnkey setup" that "includes hardware and software." iTouch works with multiple hardware vendors and uses software from the hardware

13

vendor to adapt their hardware to iTouch's software. iTouch resells their hardware as part of iTouch's package. Gerald testified that the hardware and the software, including the software from hardware vendors to make iTouch's software work, are all "sold as one single unit." Gerald agreed that iTouch is a "full service biometric firm" meaning iTouch, for example, "can provide a system to a police department that does everything from ten prints to palm prints to mug shots to lineups to electronic signature capture to printing out cards." iTouch also provides certifications, training, and technical support. Gerald opined that iTouch cannot survive without its technical support function or without the sale of its hardware because: "It's all combined, one package." Gerald would not "jump to the conclusion" that iTouch is a software development company. iTouch sells the hardware it buys from outside vendors at a significant markup.

¶ 36    At bottom, Louise simply asks this court to resolve a conflict in the valuation evidence differently than the trial court. "Conflicts in testimony regarding the value of marital assets in an action for dissolution are matters for the trier of fact, and a valuation within the range testified to by the parties' experts will not be disturbed on review." *In re Marriage of Olson*, 223 Ill. App. 3d at 646. The trial court's valuation is in the range Modica testified to. The trial court did not abuse its discretion in considering the factors in Revenue Ruling 59-60 or in valuing iTouch consistently with Gerald's expert's opinion of fair market value. *Id*.

¶ 37    Louise also appeals the trial court's denial (actually, its finding to be moot) of what on appeal Louise implicitly concedes was a motion to reopen proofs after trial. Leslie sought to supplement the trial record with evidence of iTouch's profits and their source after the date of the hearing on the petition for dissolution but before the court entered its final judgment. Gerald's expert, Modica, "valued a 100% fair market value interest in iTouch at $1,166,100 as of April

14

30, 2021. Louise's expert, Dr. Arora, valued iTouch at $5,140,000 as of July 30, 2021. The trial court adopted Modica's valuation, stating:

> "The Court finds that the fair market value of iTouch Biometrics, LLC to be $1,166,100, the value determined by Gerry's valuation expert, Joseph Modica which the Court finds to be the only credible fair market value opinion presented to the Court with proper foundation and basis."

¶ 38     The trial court did not abuse its discretion in valuing iTouch without Louise's alleged new evidence. "The date of valuation for the purposes of division of assets shall be the date of trial *or such other date as* agreed by the parties or *ordered by the court*, within its discretion." (Emphases added.) 750 ILCS 5/503(k) (West 2020). "[T]he systematic interests in achieving finality, promoting judicial economy, and avoiding piecemeal litigation will typically militate in favor of resolving all ancillary issues before entering a judgment of dissolution." *In re Marriage of Mathis*, 2012 IL 113496, ¶ 31. In this case, the trial court entered the judgment for dissolution of marriage on July 20, 2022, after the date of valuation. We may presume, then, that the trial court valued iTouch as of April 30, 2021, the date used by Gerald's expert Modica. The use of that date of valuation excluding Louise's proffered evidence was proper.

¶ 39     As previously stated, on appeal Louise does not dispute the characterization of her motion to supplement the trial evidence as a motion to reopen proofs. "The decision to deny such motions is within the sound discretion of the trial court and will not be disturbed on review absent a clear abuse thereof." *In re Marriage of Weinstein*, 128 Ill. App. 3d 234, 249 (1984). "In considering a motion to reopen proofs, a trial court should take into account whether there is some excuse for the failure to introduce the evidence at trial, whether the adverse party will be surprised or unfairly prejudiced by the new evidence, whether the evidence is of utmost

15

importance to the movant's case, and whether there are the most cogent reasons to deny the motion." *In re Marriage of Weinstein*, 128 Ill. App. 3d at 248-49.

¶ 40    In *Weinstein*, the movant sought to reopen proofs with evidence amounting to a change in financial circumstances. *Id*. This court found that "[w]e cannot say that the trial court abused its discretion in the case at bar, as the evidence Frances sought to introduce was not of utmost importance to her case and likely would not have materially altered the trial court's judgment." *Id*. at 249. The court found that "any change in the [nonmovant's] immediate earnings would not have altered the trial court's distribution of the marital estate." *Id*. We find that a similar outcome is warranted here because we find that Louise's proffered new evidence likely would not have altered the trial court's valuation of iTouch.

¶ 41    Louise seeks to reopen proofs with evidence of iTouch's profit and loss statements ending December 21, 2021, and for January 2022 for comparison purposes to demonstrate an increase in average monthly sales, net income, and profit on monthly sales, particularly comparing January 2021 to January 2022, according to Louise's motion. At trial, Modica provided extensive testimony regarding how his valuation accounted for such spikes in sales. First, Modica explained that his valuation does not utilize earnings, but cash flow; making the utility of the proposed comparison dubious for purposes of its effect on Modica's valuation, which the trial court expressly found to be the only competent evidence of iTouch's value. Modica testified explicitly that he would "put no emphasis and no reliance on" using only a profit and loss statement to project cash flow. When asked whether a company with increasing net income on a cash basis would be worth the same value Modica testified that the determination could not be made on that basis alone. Modica was asked the following question and gave the following answer:

16

"Q. Mr. Modica, I want you to assume that iTouch net income before tax is approximately 800,000, and then on top of that 800,000, Louise and Gerry Bornhofen received together around 200,000 in wages such that they being the owners have cash earnings on a cash basis of approximately a million dollars. I want you to assume in 2021, the two of them have approximately a million dollars between net income, cash net income, and the W-2 wages for the two of them. *** If that is a fact, do you still believe that the value of the company is only 1.166 million?

A. Yes".

¶ 42    Modica projected a growth rate of three percent in perpetuity. Dr. Arora, on the other hand, according to Modica, is "using *** 22 percent compound annual growth rate in perpetuity. And I am saying that there is no business that is going to grow forever at 22 percent with no capital infusion. So my 3 percent is in perpetuity based on my change in working capital as it is built into my cash flow projection." Modica's valuation accounts for spikes in sales by using the trailing twelve months for his valuation.

¶ 43    Here, as in *Weinstein*, we cannot say the trial court abused its discretion as the evidence Louise sought to introduce likely would not have materially altered the trial court's judgment. *Id*. at 249. Louise's expert's opinion was based on increasing sales and profit on sales, and Modica explained why his projections were not. The trial court wholly rejected Louise's expert's opinion and found that Modica's opinion was the only credible evidence of the value of iTouch. The addition of the evidence on which Louise's expert relied and the trial court implicitly rejected would not have altered the trial court's judgment. See *id*. We find the trial court did not abuse its

17

discretion in finding Louise's motion to supplement the trial record to be moot in light of the trial court's judgment distributing the marital property.

¶ 44    Louise separately argues the trial court's maintenance award was an abuse of the trial court's discretion.

> "The trial court has the discretion to determine the amount and duration of an award of maintenance and its decision will not be reversed on appeal absent an abuse of discretion. [Citation.] A trial court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable or when no reasonable person would take the same view. [Citation.] In determining the amount of maintenance to award, a trial court should consider the parties' income[s] at the time of dissolution as well as their potential incomes. [Citation.] We defer to a trial court's factual finding[s] as to the parties' annual incomes as long as the findings are not against the manifest weight of the evidence." (Internal quotation marks omitted.) *In re Marriage of Gabriel & Shamoun*, 2020 IL App (1st) 182710, ¶ 39.

¶ 45    Louise argues that the maintenance award is comparatively "unfair" when comparing Gerald's projected income with Louise's maintenance award. Louise contends that Gerald's income from iTouch will be $1,000,000 annually or $83,333 monthly compared to Louise's maintenance award of $7,000 per month. However, Louise concedes that income is "[b]ased upon Dr. Arora's report," which the trial court discredited, "and the actual 2021 net income." Louise's argument is premised on section 504(b-1)(1)(A) of the Act, which sets maintenance at 33 1/2% of the payor's net income minus 25% of the payee's net annual income. 750 ILCS 5/504(b-1)(1)(A) (West 2020). Louise also argues that the maintenance award is erroneous

18

pursuant to section 504(b-1)(1)(B) of the Act, and the "equitable considerations pursuant to 750 ILCS 5/504(a) for establishing a reasonable maintenance amount and duration."

¶ 46    Gerald initially responds that Louise's argument that Gerald's income from iTouch will be $1,000,000 annually is based on a baseless growth projection from Dr. Arora's discredited report and not supported by the record. Gerald further responds that section 504(b-1)(1)(A) and (b-1)(1)(B) do not apply pursuant to section 504(b-1)(1) because the parties' family income exceeds $500,000 per year; therefore, the maintenance award should have been made pursuant to section 504(b-1)(2), which is what the trial court did. Gerald argues that given Louise's imputed annual income of $65,000 and the $7,000 maintenance award, Louise received "precisely what she asked" for, or $12,500 per month. Gerald notes that Louise does not challenge her imputed income. We note that in her reply, Louise does not respond to Gerald's pointing out that the statutes upon which she initially based her arguments do not apply, and instead only argues that Gerald will enjoy both parties' original incomes from iTouch as its sole owner and, therefore, his income is larger than the trial court applied.

¶ 47    First, Gerald is correct that Louise's reliance on sections 504(b-1)(1)(A) and (b-1)(1)(B) is misplaced. Section 504(b-1)(1) clearly states that its guidelines apply "[i]f the combined gross annual income of the parties is less than $500,000." 750 ILCS 5/504(b-1)(1) (West 2020). If the guidelines do not apply the trial court is required to award maintenance "after the court's consideration of all relevant factors set forth in subsection (a) of [section 504.]" 750 ILCS (b-1)(2) (West 2020). Subsection (a) of section 504 lists 14 relevant factors. See 750 ILCS 5/504(a)(1) through (a)(14) (West 2020). The trial court's written judgment for dissolution states the court "reviewed the following statutory factors and applied all facts and evidence presented at trial." The judgment then lists and makes findings as to every factor listed including two it

19

found "inapplicable to this case" (any valid agreement of the parties and any other factor).

Regarding the parties earning capacity, the court found as follows:

"Louise is 56 years old and in good health. She possesses an advanced degree in law with a current license to practice in Illinois. She is able to work 40 hours a week full time as a lawyer or utilize her advanced degree in a number of other professions. She was last employed as a real estate attorney earning approximately $50,000 a year. Although Louise has not been employed in the legal field for a period of time, the Court finds that her advanced degree, experience, age and intelligence provide her with a very positive employment outlook. The Court notes Louise did fail to attempt to seek employment during the pendency of the entire case although she clearly had the option and ability to do so. The Court firmly believes that Louise has the ability to obtain full-time employment with her advanced degree, intelligence and level of expertise and significantly increase her ability to become self-supporting.

Similarly, as noted herein, Gerry is 57 years old and in good health. He contributed significantly to the creation of iTouch which he is awarded. Gerry is currently able to work full-time and earn a salary equal or in excess of the salary earned during the marriage. Gerry has the ability to continue earning a substantial salary even if required to pay maintenance. Gerry has demonstrated the ability to write off many items through the business of his personal benefit."

¶ 48    The trial court considered the increased earning capacity Gerald enjoys from ownership of the business. Absent Louise's spurious arguments premised on section 504(b)(1)(A) and (B) we are left with nothing more than an attempt to have this court substitute its judgment for that of

the trial court in weighing the statutory factors, which the trial court demonstrably considered and made findings about, which Louise does not directly refute. "The amount and duration of a maintenance award lies within the discretion of the trial court, for whose judgment we will not substitute our own absent an abuse of discretion which occurs only where no reasonable man would take the view adopted by the trial court." (Internal quotation marks omitted.) *In re Marriage of Brooks*, 138 Ill. App. 3d 252, 265 (1985) (citing *In re Marriage of Johnson*, 106 Ill. App. 3d 502, 508 (1982)).

¶ 49     We cannot find that "no reasonable" person would take the view adopted by the trial court. The court considered Gerald's increased earning potential, but whether or not Gerald will elect to double his personal income, regardless of whether that amount is available to him (much like substantially gainful employment is available to Louise) remains to be seen and may form the basis of a motion to modify maintenance based on a substantial change in circumstances in the future. *In re Marriage of Dea*, 2020 IL App (1st) 190234, ¶ 18 ("An order for maintenance may be modified only upon a showing of a substantial change in circumstances. [Citation.] [A] 'substantial change in circumstances' means that either the needs of the party receiving maintenance or the ability of the other party to pay that maintenance has changed." (Internal quotation marks omitted.)).

¶ 50     The question for this court is whether the trial court abused its discretion in setting the amount and duration of maintenance. *In re Marriage of Brooks*, 138 Ill. App. 3d at 265 ("The amount and duration of a maintenance award lies within the discretion of the trial court, for whose judgment we will not substitute our own absent an abuse of discretion"). Louise briefly references the trial court's allocation of real marital property but only in support of her arguments that the maintenance award and valuation of iTouch were an abuse of discretion. See

*Wing*, 2016 IL App (1st) 153517, ¶ 11. They were not. "An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *In re Marriage of Dea*, 2020 IL App (1st) 190234, ¶ 18. For now, we cannot find that the trial court's maintenance award or the valuation of iTouch based on Modica's valuation were an abuse of discretion.

¶ 51                                   CONCLUSION

¶ 52    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 53    Affirmed.